(December 16, 1908.)

MARY HARPOLD, Respondent, v. WILLIAM DOYLE, Appellant.

[102 Pac. 158.]

BREACH OF PROMISE—DAMAGES—EVIDENCE—SUMMONS—SERVICE OF BY PUBLICATION—NONRESIDENT DEFENDANT—PUBLICATION FOR TWO MONTHS—AFFIDAVIT OF PUBLISHER—PROOF OF SERVICE—HOW CONSTRUED—MAILING COPY OF SUMMONS—ALIAS SUMMONS—NOTICE IN SUMMONS—SUFFICIENCY OF JUDGMENT ROLL—WHAT CONSTITUTES —COURT SEAL ON SUMMONS—PUBLICATION OF SUMMONS—LENGTH OF TIME—PERSONAL SERVICE—CONSTRUCTIVE SERVICE BY PUBLICATION—PRESUMPTION—DEFAULT INDORSED ON COMPLAINT—STATUS OF PARTIES.

1. Under an order for service by publication of summons for two months, where the first publication is made on March 29, 1899, and the last on May 28, 1899, *held*, that the publication was made for two months.

2. Where, in the affidavit of the manager or publisher of the newspaper in which publication of summons was made, it is stated that the summons was published for sixty days, "commencing on the 29th day of March, A. D. 1899, and ending on the 27th day of May, 1899, both days inclusive, and in every issue of said paper during said time, to wit": then following with an enumeration of all of the days, beginning with the 29th day of March and ending with the 28th day of May, enumerating each and every day on which said publication was made, said paper having been published daily except Mondays, that is sufficient to warrant the conclusion that the publication was made for sixty-one days.

3. The affidavit of publication should be construed to support the validity of the judgment if it can be reasonably so construed.

4. Where it is recited in the judgment that the summons has been published for sixty days and the proof of publication clearly shows that it was published for two months, such recitation of the judgment does not negative the fact that it was published for two months, as the actual time of publication of the summons will control.

5. In service of summons by publication, where the judgment roll shows that the period of publication expired on May 28th, and that the judgment was entered on June 29th following, *held*, that the period of thirty days after the expiration of the period of publication had expired before the entry of the judgment.

6. Where the order for publication directs that a copy of the summons shall be mailed to the last known address of the defendant, and it appears that the order for publication was made on the 7th of a.certain month and that the mailing of the copy of summons and complaint occurred on the 9th of the same month and after the original summons had been returned not served, and the alias summons was issued on the 10th of said month, which was a copy of the original, *held*, that the mailing of such copy was a sufficient compliance with the provisions of sec. 4146, Rev. Stat.

7. Under the provisions of sec. 4231, Rev. Stat., this court is directed in every stage of an action to disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties.

8. Under the provisions of subd. 5 of sec. 4140, Rev. Stat., it is provided that the summons must be directed to the defendant and must contain a notice that unless the defendant appears and answers, plaintiff will apply to the court for the relief demanded in the complaint.

9. *Held*, that where a copy of the complaint was served with the summons and notice reciting as follows, to wit: "And you are notified that unless you appear and answer . . . . plaintiff will take

judgment against you for the dissolution of the bonds of matrimony between you and the plaintiff herein, and this plaintiff will resume the name of Mary Harpold, and for equitable relief," is sufficient, though it does not state that the "plaintiff will apply to the court for the relief demanded."

10. Under the provisions of subd. 1, sec. 4456, Rev. Stat., the judgment roll consists of summons with the affidavit or proof of service, and the complaint with a memorandum indorsed thereon that the default of the defendant in not answering was entered, and a copy of the judgment. The affidavit and order for publication of summons are not required to be inserted in the judgment roll or made a part thereof.

11. The act of February 27, 1903 (Sess. Laws 1903, p. 333), entitled: "An act providing that the state and county printing and binding and stationery work of the several counties throughout the state shall be executed within the state," provides, among other things, that such printing, when done by a weekly newspaper, shall only be done by newspapers that have been published fifty-two consecutive weeks prior to the time of publishing such county or state printing, and is not applicable in cases where the publication of summons is made under an order of the court.

12. The omission of the seal of the court on an alias summons is not fatal, but is a mere irregularity and does not render the process void.

13. Where the order for publication of summons directed that publication be made "at least once a week for one full month," and the summons is published in a weekly newspaper for five consecutive weeks, the first publication being made on September 16th and the last publication on October 14th following, *held*, a compliance with the statute, sec. 4146, which requires that if such publication is made in a weekly newspaper, it must not be less than a month.

14. The proceedings of courts of general jurisdiction, where the summons is served by publication, are supported by the same presumptions as where the service is personally made, and can no more be avoided for mere errors and irregularities than can their other orders and judgments.

15. Under the provisions of sec. 4456, Rev. Stat., the default of the defendant in not answering should be indorsed upon the complaint; but if the clerk neglects to make such indorsement, it is a mere irregularity that cannot be taken advantage of in a collateral attack on the judgment; and especially is that true where the judgment recites the fact that the default of the defendant was duly entered.

16. A stranger to a judgment in a court of record is not prohibited from impeaching the judgment in a collateral proceeding,

but in order to do so, he must show that he has rights and claims and interests which would be prejudiced or injuriously affected by the enforcement of the judgment that accrued prior to its rendition.

(Syllabus by the court.)

APPEAL from the District Court of the First Judicial District, for Bonner County. Hon William W. Woods, Judge.

'Action to recover damages for a breach of promise to marry. Judgment for the plaintiff. *Affirmed.*

J. L. McClear, and Herman H. Taylor, for Appellant.

When *Hahn v. Kelly,* 34 Cal. 391, 94 Am. Dec. 742, was decided, the supreme court of California was then holding practically the same as *O'Neill v. Potvin,* 13 Ida. 727, 93 Pac. 20, 257, that the affidavit and order of publication were not a part of the judgment roll. Since 1895, however, and prior to the Harpold decree, which was in 1899, California courts have held, since an amendment, that those papers are a part of the judgment roll. (*Kahn v. Matthai,* 115 Cal. 689, 47 Pac. 698; *Savings Bank v. Goodsell,* 137 Cal. 420, 70 Pac. 299; *Parson v. Weis,* 144 Cal. 410, 77 Pac. 1007.)

If from the record it appears that the court had not jurisdiction, its action is void. If the record on the whole shows that something was done to acquire jurisdiction, which was insufficient, it will not be presumed that some other thing, not shown by the record, was done which would confer jurisdiction, the whole record being taken together for this purpose. (12 Ency. Pl. & Pr. 175; *Galpin v. Page,* 18 Wall. (U. S.) 350, 21 L. ed. 959; *Fowler v. Simpson,* 79 Tex. 611, 23 Am. St. 370, 15 S. W. 682.)

*Hahn v. Kelly,* above cited, has been overruled, at least in so far as it was inconsistent with *Galpin v. Page,* 18 Wall. (U. S.) 350, 21 L. ed. 959, and *Pennoyer v. Neff,* 95 U. S. 714, 24 L. ed. 565, upon the question of the effect of the judgment against nonresidents without personal service of process. (*Belcher v. Chambers,* 53 Cal. 635.)

The record of a foreign judgment may be collaterally attacked for want of jurisdiction which may be shown even

in contradiction of recitals in the record itself. (*Thompson v. Whitman,* 18 Wall. (U. S.) 457, 21 L. ed. 897; *Knowles v. Logansport Gas Light Co.,* 19 Wall. (U. S.) 59, 22 L. ed. 70; *Greenzweig v. Strelinger,* 103 Cal. 278, 37 Pac. 398; 13 Am. & Eng. Enc. of Law, 2d ed., 988, 991, 992; *Com. v. Blood,* 97 Mass. 538; *Cunningham v. Spokane Hydraulic Co.,* 18 Wash. 524, 52 Pac. 235; 2 Black on Judgments, secs. 895, 896, 910.)

Where the record shows affirmatively that no sufficient service by publication was had, the judgment may be attacked collaterally, notwithstanding a recital therein of due service. (17 Ency. Pl. & Pr. 50; *Hyde v. Redding,* 74 Cal. 493, 16 Pac. 380; *McMinn v. Whelan,* 27 Cal. 300; *Northcut v. Lemery,* 8 Or. 316; *O'Dell v. Campbell,* 9 Or. 298; *Manning v. Heady,* 64 Wis. 630, 25 N. W. 1.)

The code authorizing constructive notice by publication in divorce cases should be strictly construed. (*Rodgers v. Nichols,* 15 Okl. 579, 83 Pac. 923.)

Statutory provisions for acquiring jurisdiction of person of defendant by publication of summons instead of personal service must be strictly pursued. (*People v. Huber,* 20 Cal. 81; *Curran v. Shattuck,* 24 Cal. 427; *McMinn v. Whelan,* 27 Cal. 300; *Forbes v. Hyde,* 31 Cal. 342; *Ricketson v. Richardson,* 26 Cal. 149; *Steinbach v. Luse,* 27 Cal. 295.)

"Under Code Civ. Proc., sec. 408, providing for the issuance of alias summons where original has been lost or returned without being served, the court has no power to issue an alias summons where the original has never been served or returned." (*White v. Superior Court,* 126 Cal. 245, 58 Pac. 450.)

A default judgment entered on a void service and return is void, and is not validated by a finding of the court that there was due service, for such finding is not conclusive of the fact under Code Civil Proc. Cal., sec. 670, subd. 1, requiring the summons, together with proof of service, to be made a part of the judgment roll in case the defendant fails to answer. (*Reinhart v. Lugo,* 86 Cal. 395, 21 Am. St. 52, 24 Pac. 1089.)

The original summons, having been once returned, was *functus officio.* (*Strode v. Strode,* 6 Ida. 67, 96 Am. St. 249, 52 Pac. 161.) And subsequent service on defendant of a copy made by plaintiff from the files of the court is a nullity. (*Fanning v. Foley,* 99 Cal. 336, 33 Pac. 1098.)

The affidavit must show whether the residence of the person upon whom service is sought by publication is known to the affiant, and if known the residence must be stated. (*Braly v. Seaman,* 30 Cal. 610.)

It is not sufficient merely to repeat the language or substance of the statute. (*Mills. v. Smiley,* 9 Ida. 325, 76 Pac. 783; *Ricketson v. Richardson,* 26 Cal. 149; *Braly v. Semen, supra.*) The acts constituting diligence or the facts showing that the defendant is a necessary party should be stated. (*Ricketson v. Richardson, supra; Warren v. Tiffany,* 9 Abb. Pr. 66, 17 How. Pr. 106.)

It must be proved that the person to be served cannot after due diligence be found in the state. (*Hulbert v. Hope Mut. Ins. Co.,* 4 How. Pr. 278; *Wortman v. Wortman,* 17 Abb. Pr. 66.)

It is not sufficient for the order to state generally that the defendant resides out of the state or cannot after due diligence be found within the state or that a cause of action against the defendant exists. (2 Estee's Pleadings, 4th ed., sec. 3939.)

Peter Johnson, and B. S. Bennett, for Respondent.

Every intendment and presumption of law is in favor of the regularity of a judgment of a court of general jurisdiction, and to overcome such presumption in a suit brought to have a judgment declared void, facts must be alleged and proved showing wherein the court failed to obtain jurisdiction to render the judgment which is so attacked. (*Ollis v. Orr,* 6 Ida. 474, 56 Pac. 162; *McHatton v. Rhodes,* 143 Cal. 275, 101 Am. St. 125, 76 Pac. 1036; 1 Black on Judgments, sec. 281; *Applegate v. Lexington etc. Min. Co.,* 117 U. S. 255, 29 L. ed. 892; *Amy v. Amy,* 12 Utah, 278, 42 Pac. 1128.)

"The tendency of modern decisions is to strengthen the position that the orders and proceedings of courts of general jurisdiction where process is constructively served are supported by the same presumptions as when the court proceeds upon personal service, and can no more be avoided for mere errors and irregularities than can its other orders and judgments." (1 Freeman on Judgments, sec. 127; *Fanning v. Krapfl*, 68 Ia. 244, 26 N. W. 133; *Dowell v. Lahr*, 97 Ind. 146; *Quarl v. Abbett*, 102 Ind. 233, 52 Am. Rep. 662, 1 N. E. 476; *Harvey v. Tyler*, 2 Wall. 328, 17 L. ed. 871; *Mulvey v. Gibbons*, 87 Ill. 367; *Matthews v. Hoff*, 113 Ill. 95; *Hall v. Law*, 102 U. S. 463, 26 L. ed. 217; *Estate of Newman*, 75 Cal. 213, 7 Am. St. 146, 16 Pac. 887; Van Fleet's Col. Attack, secs. 388, 396, 834; *Eichhoff v. Eichhoff*, 101 Cal. 600, 36 Pac. 11; *Hahn v. Kelly*, 34 Cal. 394, 94 Am. Dec. 742.)

In both of the divorce cases under consideration, the attack upon the judgment and decree is a collateral and not a direct attack, and the burden of establishing jurisdiction or a want of jurisdiction is shifted. (*Rue v. Quinn*, 137 Cal. 651, 66 Pac. 216, 70 Pac. 732; *O'Neill v. Potvin*, 13 Ida. 727, 93 Pac. 20, 257.)

While the form of the demand in the summons varies from the literal form as prescribed by statute, such a variation amounts merely to an irregularity and does not render the summons void. (*Parke v. Wardner*, 2 Ida. 285, 13 Pac. 172; *Kimball v. Castagnio*, 8 Colo. 525, 9 Pac. 488; *Keybers v. McComber*, 67 Cal. 395, 7 Pac. 838; *Berry v. Bingaman*, 1 S. D. 525, 47 N. W. 825; *Miller v. Zeigler*, 3 Utah, 17, 5 Pac. 518; *Clark v. Palmer*, 90 Cal. 504, 27 Pac. 375; *Schuttler v. King*, 12 Mont. 149, 30 Pac. 25.)

It is only where, by reason of an incorrect notice, the defendant has been misled, and where he might be injuriously affected by such variance, will the courts take notice of such irregularities. (Fitnam Trial Procd., sec. 182 et seq.)

If there is actually some notice, an irregularity in the publication does not necessarily render the judgment void,

and cannot be taken advantage of collaterally. (*Salisbury v. Sands*, 2 Dill. (U. S.) 270, Fed. Cas. No. 12,251; *Bigelow v. Chatterton*, 51 Fed. 614, 2 C. C. A. 402; *Denman v. McGuire*, 101 N. Y. 161, 4 N. E. 278; *Cruzen v. Stephens*, 123 Mo. 337, 45 Am. St. 549, 27 S. .W. 557; *Essig v. Lower*, 120 Ind. 239, 21 N. E. 1090; *Garrett v. Struble*, 57 Kan. 508, 46 Pac. 943; *Bickerdike v. Allen*, 157 Ill. 95, 41 N. E. 740, 29 L. R. A. 782; *Hardy v. Beaty*, 84 Tex. 562, 31 Am. St. 80, 19 S. W. 778; *Wilcher v. Robertson*, 78 Va. 602; *In re McNeil's Est.*, 155 Cal. 333, 100 Pac. 1086.)

The same is true of defective process. If the process is sufficient to give the party notice so that he may, if he will, appear and object to the irregularity or waive it, a judgment may be rendered which is not open to collateral attack. (*Hollingworth v. Barbour*, 4 Pet. (U. S.) 466, 7 L. ed. 922; *Matter of James*, 99 Cal. 374, 37 Am. St. 60, 33 Pac. 1122; *Keybers v. McComber, supra; Kimball v. Castagnio*, 8 Colo. 525, 9 Pac. 488; *Hollingsworth v. State*, 111 Ind. 289, 12 N. E. 490; *Kelly v. Harrison*, 69 Miss. 856, 12 So. 261, and many other cases cited in the note to *Clay v. Bilby*, 1 Am. & Eng. Ann. Cas. 923.)

In doubtful cases, as the safer course the courts are inclined to treat defects as errors or irregularities, rather than jurisdictional defects. (*Cooper v. Reynolds*, 10 Wall. (U. S.) 308, 19 L. ed. 931; *Hunt v. Loucks*, 38 Cal. 372, 99 Am. Dec. 404; *Baker v. Thompson*, 75 Ga. 164; *Hardin v. Lee*, 51 Mo. 241; *Parmelee v. Hitchcock*, 12 Wend. (N. Y.) 96; 17 Am. & Eng. Enc. Law, 2d ed., 1066.)

Many courts have held that a summons returned without having been served is not *functus officio*, but may be withdrawn for service at any time. (*Rue v. Quinn*, 137 Cal. 651, 66 Pac. 216, 70 Pac. 732; *Hancock v. Preuss*, 40 Cal. 572; *Ridenbaugh v. Sandlin*, 14 Ida. 472, 125 Am. St. 175, 94 Pac. 827.)

The recitals in the judgment of a court of general jurisdiction that the summons was duly served on the defendant are conclusive upon the question of jurisdiction in a collateral proceeding. (*Sharp v. Lumley*, 34 Cal. 616; *Sharp*

*v. Brunnings,* 35 Cal. 534; *Reeve v. Kennedy,* 43 Cal. 643; *Wiggin v. Superior Court,* 68 Cal. 400, 9 Pac. 646, and many other California cases cited in notes to *Hahn v. Kelly,* 94 Am. Dec. 756; *Dexter v. Cochran,* 17 Kan. 447; *Morris v. Bunyan,* 58 Kan. 210, 48 Pac. 864.)

The omission of a seal is not fatal, and is a mere irregularity which is amendable, and does not render the process void. (20 Ency. Pl. & Pr. 1123.)

The judgment of the court in its findings as well as the decree is an entry itself of the default of the defendant, and must be taken as conclusive upon that point. Failure to enter a default is a mere irregularity which does not render the judgment void, and cannot be attacked collaterally. (*Woolery v. Grayson,* 110 Ind. 149, 10 N. E. 935; *Morrison v. Austin,* 14 Wis. 601; *Amy v. Amy,* 12 Utah, 278, 42 Pac. 1124; *Drake v. Duvenick,* 45 Cal. 463; *Herman v. Santee,* 103 Cal. 519, 42 Am. St. 145, 37 Pac. 509.) *Gilpin v. Page,* 18 Wall. 350, 21 L. ed. 959, does not overrule the *Hahn v. Kelly* case so far as that case gives a construction to the statute of California. (See note to *Hahn v. Kelly,* 94 Am. Dec. 766.)

Mr. Justice Field expressly exempts that class of cases where an action is brought which relates to the ''personal status'' of the plaintiff in the state. By ''personal status'' is meant, of course, an action for divorce. The same exception is made by the same eminent jurist who also wrote the opinion in *Pennoyer v. Neff,* 95 U. S. 714, 24 L. ed. 565.

A stranger to the record, before he can impeach the validity of a judgment in a collateral proceeding, must show that he has rights, claims, and interests which would be prejudiced or injuriously affected by the enforcement of the judgment, and which accrued prior to its rendition. (23 Cyc. Law & Pr. 1068, and notes.)

A publication in the five weekly issues of a newspaper commencing September 16, 1904, and ending October 14, 1904, constitutes a full month. (*Forsman v. Bright,* 8 Ida. 467, 69 Pac. 473; *Bowen v. Harper,* 6 Ida. 654, 59 Pac. 179; *State ex rel. Boyd v. Superior Ct.,* 6 Wash. 352, 33 Pac. 827; *Savings & Loan Society v. Thompson,* 32 Cal. 347.)

The most of the cases cited by counsel in support of their attack upon the sufficiency of the affidavit are discussed in *O'Neill v. Potvin*, and the distinction between those cases and *O'Neill v. Potvin* is clearly pointed out in the latter case. The judgments in the former were the object of a direct attack, while in *O'Neill v. Potvin* the attack was collateral.

The right of the parties, although under disability at the time, to enter into contract of marriage to be carried out at a time when the disability shall be removed, is unquestioned where the disability is imposed by. a statute, as in the case of divorced persons. (*Buelna v. Ryan*, 139 Cal. 630, 73 Pac. 466; *Leaman v. Thompson*, 43 Wash. 579, 86 Pac. 926.)

SULLIVAN, J.—This is an action to recover damages for a breach of promise to marry. The action was tried upon an amended and supplemental complaint and answer thereto, which answer was treated as containing denials of all of the material allegations of the amended and supplemental complaint. The cause was tried by the court before a jury and verdict was rendered and judgment entered in favor of the plaintiff for $5,000 damages and costs. A motion for a new trial was made and denied. The appeal is from the judgment and order denying a new trial.

The appeal is presented on a judgment roll which contains a bill of exceptions and only such portions of the evidence as illustrate or explain the errors assigned. Counsel for appellant assigns the following three errors, to wit:

''1. That the court erred in overruling defendant's objections to the introduction in evidence of plaintiff's Exhibit 'A,' which was a judgment roll with decree of divorce in favor of the plaintiff, Mary Harpold, against Adam Harpold, her husband.

''2. That the court erred in overruling defendant's objection to the introduction in evidence of plaintiff's Exhibit 'B,' which was a decree of divorce in favor of Mary Gainey against Timothy Gainey, Mary Gainey being the plaintiff Harpold in this case.

"3. That the court erred in denying the motion of the defendant to strike from the records of the testimony in this cause plaintiff's Exhibit 'B.'"

A reversal of the judgment is asked on the ground that the court erred in admitting said Exhibits "A" and "B" in evidence, which exhibits were the judgment rolls in two divorce cases in which the plaintiff in this action was a party. It appears that the plaintiff was first married to a man by the name of Harpold, and she thereafter procured a decree of divorce from him in the state of California. She thereafter married a man by the name of Gainey and procured a decree of divorce from him in the district court of the first judicial district of this state for Kootenai county, and to support the allegation of her complaint to the effect that she was an unmarried woman when the defendant promised to marry her, she introduced on the trial the judgment rolls in both of those suits, over the objection of the appellant; and defendant rests this appeal on the contention that the court erred in admitting those judgment rolls in evidence, on the ground of certain alleged defects in the service or attempted service of summons by publication, and it is contended for that reason the courts in granting said decrees of divorce had no jurisdiction to grant them.

The reversal of the judgment in this case depends upon the question whether the courts granting those decrees of divorce had jurisdiction to grant them. If those courts had jurisdiction, then the judgment must be affirmed; otherwise, the judgment must be reversed.

We will first consider the judgment roll in the case of *Harpold v. Harpold,* which was granted by a California court. It is contended that the service by publication was defective and void. That action was commenced on March 28, 1899. Summons was issued on the day the complaint was filed, and on that day the plaintiff filed her affidavit setting forth the facts that the defendant resided outside of the state, and after due diligence could not be found therein, and that for the two months prior to the commencement of said action, the plaintiff had received from the defendant

several business letters in which he gave his address as being Rosalia, in the state of Washington, and that said letters bore the postmark on the outside of the envelope as having been mailed at that place; and that said plaintiff had been informed by other persons who had received recent letters from the defendant that defendant's residence was at the town of Rosalia in the state of Washington, and the defendant, after diligent search, could not be found within the state of California, and prayed for an order that service of summons might be made by publication. An order was thereafter made by the judge of the superior court in which the action was pending that the service of summons in that action be made by publication thereof, in the "Morning Press," a newspaper of general circulation published in the city of Santa Barbara, county of Santa Barbara, state of California, and that said publication be made as often as said newspaper is published for two months and not less than once a week during said time; and it was further ordered that a copy of the complaint and a copy of the summons attached thereto be deposited in the United States postoffice in the city of Santa Barbara, California, postpaid, directed to said defendant at Rosalia, in the state of Washington.

The business manager of said newspaper made the affidavit of publication and swears that the summons annexed to the affidavit was published in said newspaper for a period of "sixty days, commencing on the 29th day of March, A. D. 1899, and ending on the 27th day of May, 1899, both days inclusive, and in every issue of said paper during said time, to wit: On the 29, 30, 31 of March, the 1, 2, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 18, 19, 20, 21, 22, 23, 25, 26, 27, 28, 29, 30 of April, the 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, 14, 16, 17, 18, 19, 20, 21, 23, 24, 25, 26 and 27 and 28 of May."

No question is made as to the sufficiency of the affidavit for publication of summons, but it is contended that the order of publication required the summons to be published two months, and that it was not published for that period of time, as it is recited in the decree that the summons was published for a period of sixty days only, and it is contended

that the affidavit of the publisher shows that it was only published for fifty-nine days, and that even if it were published for sixty days, that was not for full two months as required by said order.

It appears that the summons was published in the "Morning Press" of Santa Barbara, the first publication being made on March 29, 1899, and it appears from the record that it was published every day that said paper was published up to and including May 28th. It seems that said paper was published every day in the week except Monday. This, it is contended, is not a two months' publication as required by the statute. This would be two full months under the authority of the *Savings & Loan Society v. Thompson*, 32 Cal. 347, and while in the affidavit of the publisher it is stated that said summons was published for a period of sixty days, the affidavit thereafter sets forth each and every day that the summons was published and shows clearly that it was published for two months. The affidavit should be construed to support the validity of the judgment if it can be reasonably so construed, and it clearly appears from the entire affidavit of the publisher that said notice was published for two full months. And even if the last day of publication fell upon Sunday in the regular issue of the paper, it does not vitiate the service under the authority last cited. We therefore conclude that it appears from the judgment roll that the summons in the Harpold case was duly and regularly served by publication, and the fact that it was cited in the decree that the summons was published for sixty days does not negative the fact shown by the proof of service that it was published for two full months. The actual time of publication of summons controls, and not the formal proof thereof. And the proof of publication should be so construed as to support the validity of the judgment, if it can be reasonably so construed.

Said summons was published in a newspaper published daily, except on Mondays. The first publication was made on March 29, 1899, and the last on May 28, 1899. This would be two full months, as the 29th day of May, the day

after the last publication, would be the first day of the third month after said 29th day of March. The last day of the two-months' period expired on the 28th. It thus appears that said summons was published on every day that could by any possibility be brought into the two calendar months extending from the 28th day of March to the 29th day of May, except, of course, Mondays, on which day said paper was not published.

In the Harpold case, it is contended that the judgment roll shows that the judgment was entered before thirty days had expired after the service of summons by publication. The judgment roll shows that the period of publication expired on May 28th, and that the judgment was not entered until the 29th of June following. It is recited at the opening of the decree that the case came on for hearing on June 28th, but the decree was not signed until June 29th. The period of publication having expired on May 28th, there would be thirty-one days from that time to June 29th, three days in May and twenty-eight days in June. The judgment might, therefore, have been legally entered on June 28th. The judgment was not rendered until after the period of publication had expired.

The admission in evidence of the judgment roll in the case of *Gainey v. Gainey* is assigned as error. It appears from the judgment roll that that action was commenced on August 27, 1904. Summons was issued on the 29th day of that month and returned and filed on the 30th of the same month, and from the return it appears that the sheriff was unable to find the defendant within his county. The affidavit for publication of summons was made September 6th, and the order for publication was made September 7th. The affidavit of mailing the summons was made on the 9th and filed on the 10th of September. It appears that an alias summons was issued on the 10th and published in the St. Joe "Budget." The affidavit of the publisher shows that the summons was published five consecutive weeks, commencing on September 16, 1904, and ending on October 14, 1904, and the findings of fact and decree were entered on November

29, 1904. It is first contended that as the summons was returned on August 30th, that from that time on there was no live process shown by the judgment roll. The alias summons was issued on September 10, 1904, and it is contended that said alias summons does not contain an impression of the seal of the court, and only contains the word "Seal" written in ink at the lower left-hand corner with an ink scroll around it. That those facts being true, the affidavit of F. C. Jones of the mailing of a copy of the summons on September 9th must be false and therefore disregarded.

The alias summons was a copy of the original, and the mailing of the copy of the original was a substantial compliance with that provision of sec. 4146, Rev. Stat., which requires a copy of the summons to be mailed to the defendant. This court held in *Ridenbaugh v. Sandlin*, 14 Ida. 472, 125 Am. St. 175, 94 Pac. 827, that under the provisions of sec. 3862, Rev. Stat., the court had control of its process and may order a summons withdrawn from the files and served after it has become a file of the court. However, it does not appear from the judgment roll whether the court in this case ordered a withdrawal of the original summons or not. Anyway, the record shows that a copy of the summons was mailed to the defendant and we think that was sufficient. As the original summons and the alias summons were the same, it would not have been possible to mislead the defendant if a copy of either had been sent him. It is only where by reason of an incorrect notice the defendant has been misled and where he might be injuriously affected by such variance that the court will take notice of mere irregularities. Under the provisions of sec. 4231, Rev. Stat., this court is directed in every stage of an action to disregard any errors or defects in the proceedings which do not affect the substantial rights of the parties.

It is contended that the demand or notice in the summons is not in compliance with the statute. The notice is that "the plaintiff will take judgment against you for the dissolution of the bonds of matrimony between you and the plaintiff herein." Under the provisions of sec. 4140, Rev. Stat.,

it is provided that the summons must contain, in actions of this kind, "a notice that unless defendant so appears and answers, the plaintiff will apply to the court for the relief demanded in the complaint." In the summons under consideration, it is stated that the plaintiff "will take judgment," and it is contended that that expression is not equivalent to "will apply to the court." In *Clark v. Palmer,* 90 Cal. 504, 27 Pac. 375, it was held that the words "plaintiff will take judgment," was in substance a notice that he "would apply to the court for the relief demanded." The statute of California on that subject is the same as our own. We think the notice in the summons was sufficient.

It is contended by counsel that the rule laid down in *O'Neill v. Potvin,* 13 Ida. 721, 93 Pac. 20, 257, to the effect that the judgment roll, in cases where service of summons was made by publication, must contain the summons with the affidavit or proof of service and the complaint with a memorandum indorsed thereon that the default in not answering was entered, and a copy of the judgment, ought to be modified so as to require the judgment roll to contain in addition to the papers there mentioned the affidavit and order for publication of summons. A considerable portion of appellant's brief is devoted to this point. We concede that there are reasons why we think the affidavit and order of publication should be made a part of the judgment roll, but as our statute does not require them to be so made, we are not inclined to modify that decision in that regard. Our legislature adopted said section from the code of California, and prior to its amendment by the legislature of that state, the rule laid down in *Hahn v. Kelly,* 34 Cal. 394, 94 Am. Dec. 742, was followed. Sec. 670 of the California Code of Civil Procedure directs what papers shall constitute the judgment roll, and was the same as sec. 4456, Rev. Stat. of Idaho, until 1895, when it was amended by including in the judgment roll the affidavit for publication of summons and the order directing the publication. Said section 4456, Rev. Stat. of this state, has not been amended, and the affidavit and order for publication of summons is not a part of

the judgment roll and cannot be considered on an appeal based on the judgment roll alone.

It is contended that under the act of February 27, 1903 (Sess. Laws 1903, p. 333), entitled: "An act providing that the state and county printing and binding and stationery work of the several counties throughout the state shall be executed within the state," it must appear that the summons was published in a paper, if published weekly, continuously and uninterruptedly in the county where it is published during a period of fifty-two consecutive weeks prior to the publication of such summons. There is nothing in that contention, as the title of said act clearly shows that the intention of the legislature in its enactment was to confine it to state and county printing.

As to the absence of the imprint of the seal of the court upon the alias summons, I think it is only fair to presume that a copy of the summons had found its way into the judgment roll. This presumption is borne out by the fact that the alias summons attached to the judgment roll shows a scroll instead of the imprint of the seal, indicating very clearly that if the paper found in the judgment roll is not the original, it is a copy thereof, and the fact that the scroll is placed thereon sustains the presumption that the original must have had a seal. (*Dexter v. Cochran,* 17 Kan. 447; *Morris v. Bunyan,* 58 Kan. 210, 48 Pac. 864.) It is held by many courts that the omission of the seal is not fatal but is a mere irregularity which is amendable and does not render the process void. (20 Ency. Pl. & Pr., p. 1123.) The publication of a copy with the omission of any scroll or the word "seal" could in no manner mislead the defendant, especially where the copy is published as in this case and recites the fact that it is issued under the seal of the court.

It is contended that the publication of the summons was not for a sufficient length of time. The proof of publication shows that it was published in a weekly newspaper and the first publication thereof made on September 16, 1904, and the last on October 14, 1904, making five publications in five consecutive weeks. Sec. 4146, Rev. Stat., provides

that the publication of the summons must be made at least once a week, which publication must not be less than one month. The contention of appellant is that the period of time from September 16th to October 14th is not a calendar month. In *Forsman v. Bright,* 8 Ida. 467, 69 Pac. 473, this court held that a publication of summons made under proper order, which publication was made in a weekly newspaper five consecutive weeks, the first being made on July 18th and the last on August 15th, was a publication of at least one month as required by the statute. No other or further publication of the summons could have been made in the weekly issues of said paper during one month. It had been published once in every week of the weeks that could by any possibility be brought within a calendar month. The publication in a weekly paper continues the publication from one issue of the paper to the next. The one month expired on the 15th of October, and the publication of the notice in the weekly issue of the paper on the 14th of October continued the publication until the next weekly issue of the paper, unless the period of publication expired before that time, which it did in this case. That being true, there was no necessity for another publication, as the publication on October 14th covered the full period of one month. This is sufficient under the decisions in *Forsman v. Bright,* 8 Ida. 467, 69 Pac. 473; *Ronkendorff v. Taylor,* 4 Pet. (U. S.) 349, 7 L. ed. 882; *Savings & Loan Soc. v. Thompson,* 32 Cal. 347.

Counsel contend that there is a clear difference of presumption as to the verity of judgments of courts of general jurisdiction when the service of summons is made personally and when it is made by publication. After jurisdiction is once obtained, there is no such difference of presumption. (*Amy v. Amy,* 12 Utah, 278, 42 Pac. 1121.)

In the *Savings & Loan Soc. v. Thompson,* 32 Cal. 347, referring to the publication of a summons in a weekly paper, the court said: "It had been published every week for the weeks that could by any possibility, in whole or in part, be brought into the three calendar months." As we understand it, this has been the rule followed by the California

supreme court, and as we adopted the statute of California in regard to the publication of summons, we adopted the rule of construction placed upon that section by the supreme court of that state before it was so adopted, and I think it would have a tendency to endanger and unsettle titles and the social status of parties now to change that rule by a court decision. As we understand it, this has been the rule of decision by many of the courts in this state, and to now hold that the first and last publication must be a month apart would not only endanger titles to real estate, but affect the personal status of many persons. Mr. Beal, in his Cardinal Rules of Legal Interpretation, 2d ed., at page 20, under the head of ''Long-standing Decisions. Stare Decisis,'' states: ''It is extremely dangerous to shake the authority of long established decided cases,'' and quotes from *Young v. Robertson,* [1862] 4 Marcq. H. L. 314, as follows:

''There is another duty incumbent on all courts, and pre-eminently upon a court of ultimate appeal, and which has been invariably observed, namely, that as regards those rules which regulate the settlement and devolution of property, those courts which have to interpret instruments and acts of parties must take care to be very guarded against letting any supposed notions as to the inaccuracy of any rule which has in fact been acted upon induce them to alter it so as to endanger the security of property and titles.''

For this court to now hold that in the service of summons by publication in a weekly newspaper, the first and last publications must be a month apart, would place a different construction upon that provision of sec. 4146 which provides that when a summons is served by publication, such publication must be at least once a week for not less than one month; would overrule the case of *Forsman v. Bright,* 8 Ida. 467; and would unsettle and overturn many cases in the state where judgment has been obtained under service of summons by publication, and we deem it unwise to do so. It is now with the legislature to so amend said section as to require the first and last publications of the summons to be made at least a month apart, if it is desirous of having that done.

Making the change in that way would not unsettle or disturb judgments based upon service by publication, in accordance with the rule laid down in said case of *Forsman v. Bright, supra.* In the case of *Amy v. Amy,* 12 Utah, 278, 42 Pac. 1121, the court said:

"Why, on principle, two judgments in the same court of general jurisdiction, in due form, should be entitled to different presumptions respecting the verity of the record, simply because one is against a nonresident, where the proceeding is *in rem,* is a question, the proper solution of which no court has successfully attempted."

The doctrine laid down there is approved by Mr. Freeman in his work on Judgments, sec. 127, where he says:

"The tendency of recent decisions is to strengthen the position that the orders and proceedings of courts of general jurisdiction, where process is constructively served, are supported by the same presumptions as where the court proceeds upon personal service, and can no more be avoided for mere errors and irregularities than can its other orders and judgments."

These presumptions go to the verity of the orders and decrees of the court after it has obtained jurisdiction, and the court should examine the proof of service of summons by publication very carefully and see that the law is substantially complied with before making any orders or proceeding in the case.

Under the provisions of subd. 1 of sec. 4456, Rev. Stat., the judgment roll, in case the complaint is not answered, must contain, among other papers, the complaint with a memorandum indorsed thereon that the default of the defendant in not answering was entered. And it is contended that as such default is not indorsed on the complaint in the Gainey case, it was error to admit said judgment roll in evidence. It is the duty of the clerk to make such indorsement and if he neglects to do so, it is a mere irregularity that cannot be taken advantage of in a collateral attack on the judgment, and especially is that true where the judgment recites that the default of the defendant was duly entered.

If the service of summons was complete, jurisdiction had been obtained over the defendant, and the failure of the clerk to indorse on the complaint a formal default can in no way affect the jurisdiction of the court. In the Gainey case, both the findings of fact and decree recite the fact that the default of the defendant had been duly entered. The court in its findings of fact, as well as in the decree, has found that the defendant was in default for want of an answer, and those recitals must be taken as conclusive upon that point, unless it appears upon the face of the judgment roll that such recitals are not true. It was held in *Amy v. Amy*, 12 Utah, 278, 42 Pac. 1121, that every matter adjudicated in a suit becomes a part of the record which henceforth proves itself without referring to the evidence which has been adjudicated. The entry of the default was no part of the service of summons. The defendant derives no benefit from its entry, neither is he prejudiced by the failure of the clerk to indorse his default upon the complaint. When the service of summons is properly made, it is a mere irregularity or omission in the exercise of jurisdiction and cannot be attacked collaterally. It has been held that an entry of judgment before the time for answering had expired in cases where the publication of the summons was made is merely irregular and does not subject the judgment to collateral attack. (*White v. Crow*, 110 U. S. 183, 4 Sup. Ct. 71, 28 L. ed. 113; *In re Newman's Estate*, 75 Cal. 213, 16 Pac. 887.) The rule is well established that where the court has jurisdiction of the subject matter and the person of the defendant, the judgment is not subject to a collateral attack. The indorsement of default on the complaint is no part of the procedure necessary to obtain jurisdiction. There either was or was not a default, and it is the fact as to the default and not the formal entry thereof that controls. It was held in *Drake v. Devenick*, 45 Cal. 455, that a valid judgment by default may be rendered by the court though no formal default has been entered, and that the only purpose of a default is to limit the time during which the defendant may file his answer, and that time never extends beyond a trial

and judgment. (*Herman v. Santee*, 103 Cal. 519, 42 Am. St. 145, 37 Pac. 509.)

It was urged on the oral argument of this case that the defendant is estopped from defending in this action on the ground of the invalidity of the decrees of divorce referred to, for the reason that he knew the exact status of the plaintiff so far as her divorces from her husbands were concerned. It appears from the evidence before us that the plaintiff and defendant discussed the fact of her having procured divorces from her former husbands, and that he had examined the decrees in both cases, and was satisfied that the respondent was free to marry again. That being true, it is contended that the subsequent acts of the defendant and his relations with the plaintiff were such that it would be most unjust and inequitable to permit him to defeat this action upon a mere technicality; that he is now seeking the benefit and protection of an attack upon the very decree in which he manifested such an unusual interest at the time he commenced his courtship. What rights had he acquired prior to the decrees that can be affected by permitting them to stand? He has not been prejudiced and cannot be prejudiced in any particular by upholding said decrees, save as he may be compelled to answer for the wrongs done by him to the respondent, not before, but after the decrees. He cannot be permitted by any principle of justice to attack these decrees unless it is made to appear that his interests would be prejudiced or injuriously affected by the enforcement of the judgment, which interests must have accrued prior to the rendition thereof, and this has not been done. It is stated in 23 Cyc., p. 1068, that a stranger to the record is not prohibited from impeaching the judgment in a collateral proceeding, but in order to do so, he must show that he has rights and claims or interests which would be prejudiced or injuriously affected by the enforcement of the judgment which accrued prior to its rendition. The article in Cyc. was prepared by the author of Black on Judgments. It does not appear from the record before us that the appellant had any interests or rights or claims which existed prior to the

rendition of either of the decrees of divorce referred to, which have been or can be injuriously affected by said decrees. The acts on which this suit is based were done and performed by the defendant some time after the entry of the decrees referred to. Mr. Black further states in said article that rules permitting assaults upon judgments at all times and by all persons would in many cases subject the administration of law and justice to restrictions and limitations that are against every consideration of public policy.

The attack of appellant upon said decrees is collateral, and collateral assaults on judgments of courts of general jurisdiction are not favored in law where the judgment determines the personal or social status of the parties, and are not favored in any case where the equities are upon the side of the party attempting to uphold the validity of a decree. (*Amy v. Amy, supra.*)

The court did not err in admitting in evidence the judgment rolls above referred to. We find no reversible error in the record. The judgment is therefore affirmed, with costs in favor of the respondent.

STEWART, J., Specially Concurring.—I concur in the conclusion reached by Justice Sullivan that this judgment should be affirmed, but dissent from that part of the opinion which holds that the defendant, having examined the judgments offered in evidence and having discussed the same with the plaintiff, and having no interest which accrued prior to the rendition of such judgments which would be affected by such judgments, could not question the validity of such judgments. In my opinion, the text announced in 23 Cyc. 1068, has no application to the facts in this case.

AILSHIE, C. J., Specially Concurring.—I concur in an affirmance of the judgment. I must specifically dissent, however, from that part of the opinion which holds in effect that twenty-seven days constitute one month. Under our statute the word "month" means a calendar month. (Sec. 16, subd. 4, Rev. Stat.) When the statute says a summons

shall be published for "at least one month," it means "at least" one calendar month. One calendar month cannot intervene between the 16th of one month and the 14th of the following month. Authorities and opinions from all the courts in Christendom cannot change the obvious and unmistakable meaning of this plain English which commands that a publication shall be made for "at least one month." When a statute says a thing shall be done for "at least" a certain length of time, it means that such period of time shall elapse between the commencement and ending of the act. (*Early v. Doe,* 16 How. 610, 14 L. ed. 1079.) I do not understand that the trial courts and members of the bar of the state have generally taken the view indicated in the majority opinion.

## ON REHEARING.

### (June 7, 1909.)

#### (Syllabus on Rehearing.)

17. An agreement to marry entered into within six months after the date of a decree of divorce, to be consummated and the marriage contract actually made after the expiration of the six months from the date of the decree, is valid, and damages for a breach thereof may be recovered in a proper action.

18. *Held,* under the facts of this case that the law of estoppel does not apply, and that the acts, conduct and knowledge of the defendant were not sufficient to estop him from denying the legality of the decrees of divorce offered in evidence by the plaintiff.

STEWART, J.—A rehearing was granted in this case and the cause has again been exhaustively argued both orally and in briefs of counsel for both parties. All of the questions presented by counsel upon the rehearing were fully considered by this court in the original opinion, except the one question as to whether Mrs. Harpold could enter into a contract to marry before the expiration of six months after the granting of divorce in her suit against Gainey, although such marriage contract was not to be consummated until after the expiration of six months from the date of such decree.

Sec. 2617, Rev. Codes, makes "A subsequent marriage contracted by any person during the life of a former husband or wife of such person, with any other person other than such former husband or wife, . . . . illegal and void from the beginning unless: (1) The former marriage of either party has been annulled or dissolved more than six months." It is the marriage when entered into within six months from the date of the decree which this statute makes void and not the agreement to marry. The statute does not prohibit a person from entering into an agreement to marry before six months has expired after the date of the decree, if such agreement is to be consummated and the marriage contract actually made after the expiration of the six months. In the case at bar the contract alleged in the complaint was not to be carried out in violation of the laws of the state. It was an agreement to marry to be consummated at a time when the marriage would have been valid, and it is this agreement which the plaintiff alleges the defendant failed to keep and for which damages were sought. The statute does not prohibit the making of such an agreement or render the same illegal or void, and the authorities hold that such an agreement is valid. This question was directly before the supreme court of California in the case of *Buelna v. Ryan,* 139 Cal. 630, 73 Pac. 466, in which the court said:

"If she [plaintiff] had the right to marry at a certain time, she had the right before that time to agree to marry, provided the agreement was not to be consummated until the time. In other words, the plaintiff had the right to agree to do what the law gave her the right to do. The law gave her the right to marry after the year, and to agree to do so before the expiration thereof. . . . . It is the marriage that is declared illegal and void."

The former opinion very fully dealt with all other questions presented on the argument at the rehearing, and after a careful re-examination of such questions the court still adheres to the opinion formerly expressed, except upon the question of estoppel. After a re-examination of this question, the court is unanimously of the opinion that the law

of estoppel does not apply to the facts of this case, and that the evidence as to the acts, conduct and knowledge of the defendant, appellant here, was not sufficient to estop him from denying the legality of the decrees of divorce offered in evidence.

A reference to the former opinion will show that the majority of the court were of the opinion that the trial court did not err in admitting in evidence the decrees in the case of *Mary Harpold v. Adam Harpold* and *Mary Gainey v. Timothy Gainey,* and that Justice Ailshie dissented and was of the opinion that the court did err in admitting in evidence the decree in the case of *Mary Gainey v. Timothy Gainey.* With the above modification of the former opinion the majority of the court are of the opinion that the judgment should be affirmed. Judgment *affirmed* with costs in favor of the *respondent.*

Sullivan, C. J., concurs.

Ailshie, J., dissents for the reasons stated in his former dissenting opinion.