(February 8, 1911.)

# PERRY F. HETTINGER, Appellant, v. GOOD ROAD DISTRICT NO. 1 OF WASHINGTON COUNTY, IDAHO, Respondent.

[113 Pac. 721.]

GOOD ROAD DISTRICTS — CONFLICT OF PROVISIONS — APPLICATION OF FUNDS—SPECIAL AND LOCAL LAWS—DOUBLE TAXATION—NOTICE OF ELECTION OF ROAD COMMISSIONERS — TIMES OF PUBLICATION OF NOTICE OF BOND ELECTION.

(Syllabus by the court.)

1. Secs. 1056 and 1058 of the Rev. Codes of Idaho, as amended by Laws of 1909, p. 172, are not in conflict in providing for the application and expenditure of the revenue raised in a good road district by the levy made by the road commissioners of the district and the general tax levy made by the board of county commissioners.

2. It is not double taxation for the statute to authorize the board of county commissioners to provide that 75% of the general tax levy raised for road purposes in a good road district shall be expended in such district, and 25% shall go into the county road fund for expenditure in the remaining portions of the county, as there is no taxing the same property twice during the same year for the same purpose while other and similar property is taxed only once during the same period for the same purpose.

3. The good roads law, Rev. Codes, secs. 1049 to 1068, inclusive, providing for the organization and government of good road districts, is not a local or special law as used in sec. 19, art. 3 of the state constitution, as it is general in its application, and applies alike to all sections of the state where the taxpayers are willing to assume the burden of additional taxation for the purpose of improving the roads within such sections, and applies to all good road districts within the state, and relates to all of a class.

4. The publication of the notice calling for an election for the purpose of determining whether a good road district should be organized, published once a week for two consecutive weeks, beginning with the issue of August 14, 1909, and ending with the issue of August 21, 1909, of the election to be held August 30, 1909, is a compliance with the provisions of sec. 1052, which requires that the notice be published at least two weeks prior to such election.

5. Rev. Codes, sec. 1054, authorizing the issue of bonds of a good road district, provides no method or means of giving notice of the election authorizing such bonds, or the method of conducting the.

same, and is incomplete, indefinite and incapable of being executed, and is therefore illegal and void.

APPEAL from the District Court of the Seventh Judicial District, for the County of Washington. Hon. Ed. L. Bryan, Judge.

An action to determine the legality of the organization of Good Road District No. 1 of Washington county, and to enjoin the issue of bonds of said good road district. Judgment for defendant. Plaintiff appeals. Judgment *modified.*

Smith & Scatterday, for Appellant.

There was not sufficient notice of the election called for the purpose of determining whether this district should be organized. Sec. 1052, Rev. Codes, provides that such notice shall be published for at least two weeks prior to such an election in a' weekly newspaper. The affidavit of publication shows that the notice was published once a week for two consecutive weeks, beginning with the issue of August 14, 1909, and ending with the issue of August 21, 1909, only one week intervening between the first and last publication, and the authorities are not in accord as to whether that constitutes publication for two weeks. (29 Cyc. 1121; *Market Nat. Bank v. Pac. Nat. Bank,* 89 N. Y. 398; *Loughridge v. Huntington,* 56 Ind. 253; *Stephenson v. Texas & P. Ry. Co.,* 42 Tex. 162; *Mitchell v. Woodson,* 37 Miss. 567.)

B. S. Varian, for Respondent.

It may be presumed that proper notices of election were given, for it is a rule of very general application that, where an act is done which can be done legally only after the performance of some prior act, proof of the latter carries with it a presumption of the due performance of the prior act. (*Knox County v. Nat. Bank,* 147 U. S. 91, 13 Sup. Ct. 267, 37 L. ed. 93.)

The legislature has sought in the good road district law to provide, so far as practicable, for the payment by the

good road district of a fair proportion of. the maintenance and repair expense of public bridges and public highways without the district, and which are directly and indirectly a benefit to the district. The highways of the county may be considered as one general system of which the different districts and good road district form parts. To facilitate intercourse between the inhabitants of the various districts, it is fair and reasonable that all should be taxed to defray the expense of building a bridge that otherwise could not be constructed on account of its great cost. (*Humbird Lumber Co. v. Kootenai County,* 10 Ida. 490, 79 Pac. 396; citing 1 Cooley on Taxation, 3d ed., 394; 27 Am. & Eng. Ency. of Law, 2d ed., 607.)

The following cases tend to support the contention that the publication of the notice twice in a weekly paper is sufficient two weeks' notice: *Sherwood v. Wallin,* 154 Cal. 735, 99 Pac. 191; *Nevada v. Yellow Jacket S. M. Co.,* 5 Nev. 418; *Ricketts v. Hyde Park,* 85 Ill. 110; *Elder v. Horseshoe Mining & Milling Co.,* 194 U. S. 248, 24 Sup. Ct. 643, 48 L. ed. 960; *Swett v. Sprague,* 55 Me. 190; *Olcott v. Robinson,* 21 N. Y. 150, 78 Am. Dec. 126; *Wood v. Morehouse,* 45 N. Y. 369; *Tidd v. Grimes,* 66 Kan. 401, 71 Pac. 844; *Knox County v. Nat. Bank,* 147 U. S. 91, 13 Sup. Ct. 267, 37 L. ed. 93.

Ed. R. Coulter, *Amicus Curiae.*

The law governing the organization and operation of irrigation districts is "general," because it applies to all irrigation districts in the state. (*Boise Irr. etc. Co. v. Stewart,* 10 Ida. 38, 77 Pac. 25, 321; sec. 121, Sutherland, Stat. Const.)

If counsel's contention is correct, then the scheme devised by the legislature for the running of municipalities and the running of independent school districts is also unconstitutional and void. If the tax in one case is duplicate, it is in the others. This question is settled in *Humbird Lumber Co. v. Kootenai County,* 10 Ida. 490, 79 Pac. 396.

STEWART, C. J.—This action was brought for the purpose of having determined the legality of the organization of Good Road District No. 1 of Washington county and a proposed issuance and sale of bonds of said district in the sum of $10,000, to be issued for the purpose of raising funds with which to construct roads in said district.

The cause was tried and a judgment rendered, adjudging that Good Road District No. 1 was in all respects legal and valid, and that the proposed bond issue of said district in the sum of $10,000, bearing interest at the rate not to exceed 6% per annum, and maturing in twenty years with the privilege of redemption after ten years, authorized at an election held on the 7th day of April, 1910, was in all respects legal and valid, and that said bond issue was a legal and valid obligation of said Good Road District No. 1.

A motion for a new trial was made and overruled, and this appeal is from the judgment and from the order overruling the motion for a new trial.

Appellant assigns five errors. First, that there is such a conflict between the provisions of Rev. Codes, secs. 1056 and 1058, as amended by Laws of 1909, p. 172, as to be irreconcilable and therefore renders such act invalid and inoperative. Sec. 1056, *supra,* among other things provides: "For the purpose of providing moneys for the more extensive improvement of roads in such districts, there is hereby appropriated and the county auditor shall set apart seventy-five per cent (75%) of the general tax levy raised for road purposes in the district to the credit of such district, which shall constitute a fund for the improvement of the roads in such districts." While sec. 1058, *supra,* among other things provides: "When any such good road district is organized under the provisions of this chapter, it shall supersede all other road districts or parts of districts within the limits of such good road district, and the good road commissioners shall have the power to levy and apply all road taxes collected within their respective districts."

It is very clear, however, that when these two sections are carefully examined there is no conflict in their provisions. Sec. 1056 makes it the duty of the board of good road commissioners of a district to provide for a tax levy each year within their respective districts, upon the assessable property within such district, sufficient to pay the interest on bonds outstanding against such district, also to pay any other indebtedness incurred during the year in which such levy is made. And this section further provides: "For the purpose of providing moneys for the more extensive improvement of roads in such district, there is hereby appropriated and the county auditor shall set apart seventy-five per cent (75%) of the general tax levy raised for road purposes in the district to the credit of such district."

While this section provides for two sources for the raising of revenues to be used in a good road district, the first by a special tax, and the second by the general tax levy made by the board of county commissioners, still it is apparent that the language used in sec. 1058, "and the good road commissioners shall have the power to levy and apply all road taxes collected within their respective districts," has reference to the taxes levied and collected by the board of good road commissioners within the district, and has no reference to the 75% of the general tax levy made by the board of county commissioners, notwithstanding the fact that the latter is set apart to said districts and authorized to be expended within the same. This construction of the language found in sec. 1058 perfectly harmonizes these two sections. This construction is clearly indicated when we take into consideration the language of this section which follows the above-quoted provision: "It shall be the duty of the board of county commissioners to apportion to such good road district all road and poll taxes collected or levied within their district." This clearly indicates that the legislature was dealing with the special tax authorized to be levied by the commissioners of the road district, and not with the 75% of the general tax levy referred to in sec. 1056.

Second.   It is contended that the act authorizing the organization of good road districts is repugnant to the provisions of sec. 19, art. 3 of the state constitution.   This section, among other things, provides: "The legislature shall not pass local or special laws in any of the following enumerated cases . . . . opening, altering, maintaining, working on, or vacating roads, highways, streets, alleys, town plats, parks, cemeteries, or any public grounds not owned by the state." This section of the constitution prohibits the legislature from passing a law which is local or special with reference to "opening, altering, maintaining, working on, or vacating roads, highways, etc." The good roads law, however, is not local or special as used in this section of the constitution.   It is general in its application and applies alike to all sections of the state where the taxpayers thereof are willing to assume the burden of additional taxation for the purpose of improving the roads within such section, and applies to all good road districts within the state, and relates to all of a class, and is like in its operation to the organization of cities and villages within the state, irrigation districts, and other municipalities, which are provided for by a general law. (*Boise Irr. etc. v. Stewart,* 10 Ida. 38, 77 Pac. 25, 321.)

Third.   It is contended that because of the provisions of sec. 1056, which provides that 75% of the general tax levy made by the board of county commissioners for road purposes is set apart to a good road district and the remaining 25% is to be expended by the county commissioners upon the roads of the county outside of such good road district, it is double taxation, and contrary to the provisions of sec. 5, art. 7 of the constitution.   There is no merit in this contention.   There is only one tax levy made by the board of county commissioners for road purposes, and the fact that 75% of the general tax levy made by the board of county commissioners within a road district is set apart by the county auditor to such district and the remaining 25% is authorized to be expended by the board of county commissioners upon the roads of the county outside of such good road district, does not make the property of such district subject to double

taxation.   There is no taxing the same property twice dur-
ing the same year for the same purpose, while other like and
similar property is taxed only once during the same period
for the same purpose.   The 25% which goes to the road fund
of the county is authorized to be expended by the board of
county commissioners for maintaining and repairing public
bridges and public highways, and directly and indirectly
benefits the taxpayers of the district.   Such expenditure is
authorized to be used in constructing and maintaining a gen-
eral road system within the county, thus affording oppor-
tunities for the inhabitants of the various districts to pass
from one section of the county to another.   It is the applica-
tion of the fund received by taxation and not a double taxa-
tion of the same property.

Sec. 882 of the Rev. Codes authorizes the board of county
commissioners to levy a general road tax upon all the prop-
erty within the county, including the towns and cities, and
the county is required to turn over to such towns and cities
one-fourth of the fund thus raised to be expended by the
municipalities upon its streets and alleys, and under the
provisions of sec. 2238 of the Rev. Codes, towns and cities
are given authority to raise an additional fund by special
taxation for the same purpose, and the same argument made
in this case would apply to sec. 882 with reference to turn-
ing over a portion of the general tax levied to a municipality,
and likewise many other sections of the statute would be
affected by the same course of reasoning; but clearly these
various provisions are not double taxation.   (*Boise Irr. etc.
v. Stewart*, 10 Ida. 38, 77 Pac. 25, 321.)

Fourth.   It is contended that full notice was not given of
the election called for the purpose of determining whether or
not the district should be organized.   Sec. 1052, with reference
to the notice which shall be given, among other things pro-
vides: ''Such notice shall be published for at least two weeks
prior to such election in a weekly newspaper printed and pub-
lished within the county in which such district is located, and
copies of such notice shall be posted in at least three places in

said proposed district at least two weeks before the date of such election." The affidavit of publication in this case shows that the notice was published once a week for two consecutive weeks beginning with the issue of August 14, 1909, and ending with the issue of August 21, 1909, one week intervening between the first and last publication.

It will be observed that the statute does not provide the number of times the notice shall be published, but it appears from the dates of publication that fifteen days intervened be- tween the first publication and the election, August 30th, and that full two weeks intervened between the first publication and the election. The notice was sufficient. (*Harpold v. Doyle,* 16 Ida. 671, 102 Pac. 158; *Sherwood v. Wallin et al.,* 154 Cal. 735, 99 Pac. 191; *State v. Yellow Jacket S. M. Co.,* 5 Nev. 418; *Ricketts v. Hyde Park,* 85 Ill. 110; *Elder v. Horse- shoe Min. & Mill. Co.,* 194 U. S. 248, 24 Sup. Ct. 643, 48 L. ed. 960; *Olcott v. Robinson,* 21 N. Y. 150, 78 Am. Dec. 126.)

Fifth. It is also contended that the bond election was illegal and void, for the reason that the statute does not pro- vide for holding such election. Sec. 1054 of the Rev. Codes authorizes the good road commissioners, "with the consent of a two-thirds majority of the qualified electors of their respec- tive districts, voting at any election held for the purpose of issuing bonds, to issue bonds not exceeding 25% of the assessed value of the real property within such good road district." This section, however, makes no provision for any notice of election or the manner of conducting the same, or the qualifica- tion of voters thereat, or how, or in what manner, or by whom, such election shall be held. Counsel for respondent, however, contends that the provisions found in sec. 1052 of the Rev. Codes, in relation to the election of road commissioners, should apply to elections held under the provisions of sec. 1054 for the issuing of bonds. Sec. 1052 provides with reference to the holding of elections for road commissioners as follows: "The said elections, notices thereof and the manner of con- ducting the same, shall be in all respects like those now re- quired for the election of school directors in independent school districts." This section, however, in no way refers to

elections to be held for the purpose of authorizing a bond issue, and there is no intimation by any language used in the section that the legislature intended to make the statute with reference to holding elections for directors in independent school districts apply and govern elections held under the provisions of sec. 1054. The elections referred to in sec. 1052 relate wholly to the organization of the district and the election of commissioners for such districts, and no reference is had to elections held under the provisions of sec. 1054. In fact, there is no method provided in sec. 1054, or in any other part of the act, which provides for the method or the machinery for carrying out and executing this section. The section, therefore, is uncertain, indefinite and incapable of execution, and is invalid and of no force or effect.

The question arises, however, whether the fact that sec. 1054 is incomplete and incapable of execution would affect the validity of the remainder of the act. It will be found from an examination of this act that it provides for the organization of good road districts, for officers to control and govern the same, and that such organization shall supersede all other road districts or parts of districts within the limits of such good road districts, and that the road commissioners shall have the power to levy and apply all road taxes collected within their respective districts, and is complete and entire and operative with sec. 1054 eliminated. The fact that the district is unable to vote bonds does not affect its legality or the power of such district to control and govern the road matters of such district. (*Cunningham v. Thompson,* 18 Ida. 149, 108 Pac. 898; *Knight v. Trigg,* 16 Ida. 256, 100 Pac. 1060.)

The judgment of the district court is therefore *modified,* and the trial court is directed to enter judgment affirming and decreeing the legality of Good Road District No. 1 of Washington county, Idaho, and decreeing that the bond issue of said Good Road District No. 1 in the sum of $10,000 is illegal and void. Costs awarded to the appellant.

Sullivan, J., concurs.

AILSHIE, J., Concurring Specially.—I concur in all the conclusions reached in this case except as to the validity of the publication of notice of election for organization of the district. I am unable to concur in the holding that eight days constitute "two weeks" within the meaning of the statute. In my opinion, such a holding is contrary both to the letter and the spirit of the law. I had occasion to express my view on this subject in *Harpold v. Doyle*, 16 Ida. 693, 102 Pac. 158.