(April 28, 1910.)

ARCH CUNNINGHAM, Appellant, v. W. H. THOMPSON, D. H. MOSELEY and A. P. BURNS, as the Board of County Commissioners of Ada County, Respondents.

[108 Pac. 898.]

STATUTES—WHEN VOID—ROADS—SPECIAL TAX—BOARD OF COUNTY COMMISSIONERS—POWER TO TRANSFER FROM CURRENT EXPENSE TO ROAD FUND.

(Syllabus by the court.)

1. A section of a statute which provides for raising a fund to pay bonds by a special tax and which provides no machinery or method for carrying into effect such section, will be held to be inoperative and void.

2. Sec. 21 of an act approved March 16, 1909 (Laws of 1909, p. 274), commonly known as "The Good Roads Law," imposes no duty upon the board of county commissioners to levy the special tax referred to in such section, and provides no method or manner of levying such tax or the collection of the same, and provides no machinery for carrying said section into execution, and is therefore inoperative and void.

3. It is the law in this state that if the provisions of an act are connected in subject matter, dependent on each other, and designed to operate for the same purpose, or are otherwise so dependent in meaning that it cannot be presumed that the legislature would have passed one without the other, then if one part falls, the entire act must fall.

4. *Held,* that sec. 21 of the act of March 16, 1909 (Laws of 1909, p. 274), is an essential and necessary part of said act, and that it clearly appears that the legislature would not have passed said act without sec. 21 having been made a part thereof, and that sec. 21 and sec. 20 were designed by the legislature to operate for the same purpose—that is, to provide the method of creating a fund for the construction and maintenance of the roads of the county, and that each section depends upon the other.

5. *Held,* that sec. 21 being inoperative and void, the entire act is void.

6. The emergency contemplated by Rev. Codes, sec. 937, which authorizes the board of county commissioners to transfer funds from the current expense fund to the road fund, was such emergency as might arise out of the actions of the elements in destroying or injuring roads or bridges, and not emergencies arising by the failure of the legislature to authorize the levying of an adequate tax to keep the roads in such condition as the board of commissioners deem they should. be kept in, or emergencies arising because of inoperative and void acts of the legislature in creating such road fund.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Fremont Wood, Judge.

An appeal from a judgment of the district court affirming an order of the board of county commissioners transferring money from the current expense fund to the road fund. *Reversed.*

E. J. Frawley, for Appellant.

If an act of the legislature is so vague and uncertain in its terms as to convey no meaning, or if the means of carrying out its provisions are not adequate or effective, or if it is so conflicting and inconsistent in its provisions that it cannot be executed, it is incumbent upon the courts to declare it void and inoperative. (*Hillborn v. St. Paul Ry. Co.,* 23 Mont. 229, 58 Pac. 551, and cases cited.)

If it is plain that the legislature would not have passed the valid portions of the law without the invalid portion, the entire act must fall. (*In re Hendricks,* 60 Kan. 796, 57 Pac. 965.)

M'Cready Sykes, for Ada County Good Roads Assn., *amicus curiae.*

The law is undoubtedly in some respects a bungling and defective piece of legislation. This distinction, however, is not unique in American legislation, and what we have to do is to take the law as we find it, and the fact that it is crude and incomplete throws little or no light on the question of its constitutionality. Unless it violates some provision of the constitution, it is a valid exercise of legislative power, however badly done it may be, and under our system of government the remedy for its defects must be found in the proper and lawful process of amendment at the hands of the lawmaking body. (*Wright v. Kelley,* 4 Ida. 629, 43 Pac. 565.)

Chas. P. McCarthy and Cavanah & Blake, for Respondents, cite no authorities.

STEWART, J.—The appellant, a resident taxpayer of Ada county, appealed to the district court from the following order made by the board of county commissioners:

"WHEREAS, It appears to this board of county commissioners that the maximum amount of eighty cents on one thousand dollars on the assessable property in Ada County, which can be levied for road purposes for the fiscal year beginning on the second Monday in January, 1910, will yield approximately the sum of $8,000.00; and,

"WHEREAS, It appears that during the fiscal year beginning on the second Monday in January, 1910, it will be necessary for this board of county commissioners in keeping the public highways within said Ada County in repair and in a safe condition for public travel to expend not less than the sum of $20,000.00; and,

"WHEREAS, It appears that the amount of money that can be raised by levying the maximum rate provided for by law for road purposes will be entirely insufficient to keep the public highways of Ada County in repair and in a safe condition for public travel, and that it will be necessary for this board to cause to be transferred from the current expense fund

of said Ada County to the road fund the sum of at least
$12,000.00 for road purposes;

"Now, THEREFORE, BE IT RESOLVED, That for the purpose
of providing sufficient finances to keep the roads and bridges
of Ada County, State of Idaho, in repair and in a safe con-
dition for public travel during the fiscal year beginning on the
second Monday in January, 1910, the amount of $12,000.00,
be, and the same is hereby transferred from the current ex-
pense fund of said Ada County for said fiscal year for the
county road fund for said year. The said sum of $12,000.00,
so transferred to the county road fund to be used to meet
the necessary cost and expenses of constructing, maintaining
and repairing roads and bridges during the said fiscal year.

"And be it further resolved, That a special tax not to ex-
ceed one-half of one per cent on the taxable property of said
Ada County be levied annually until the said amount of
$12,000.00 so transferred from the current expense fund to
the county road fund is raised and paid."

The cause was tried in the district court and the order of
the board of county commissioners was sustained and affirmed.
From that judgment this appeal was taken. It is contended
by appellant that the board of county commissioners had no
authority to make the order appealed from, for the reason
that such order was made by reason of the provisions of an
act approved Mar. 16, 1909 (Laws of 1909, p. 274), commonly
known as "The Good Roads Law," which act is inoperative
and void.

It may be conceded that if what is known as "The Good
Roads Law" is void, then the county commissioners had no
authority to enter the order appealed from and the same
should be annulled and set aside. Referring to this act it
will be observed that two methods are provided for raising
revenue for road purposes; the first is by levying a road tax
which shall not exceed eighty cents on each one thousand dol-
lars of the assessed valuation of the property taken from the
assessment-roll for the preceding year; the second, by issuing
bonds of the county upon a two-thirds vote of the electors of
the county, and the creation of special taxing districts extend-

ing along the course of a road or highway, and by levying a special tax upon the lands within said district to pay such proportion of such bonded indebtedness as the board may determine. The second method thus provided for is embraced in the provisions of sec. 21 of this act, and it is the contention of appellant that this section is so indefinite, uncertain and incapable of execution that it is void, and because such section is void the entire act is void. By the provisions of this section it no doubt was the intention of the legislature to provide a method by which, when bonds were authorized to be issued by a vote of the electors of the county for the purpose of constructing or improving a particular line of road or a bridge, the cost of constructing or improving such road should be partly assumed and paid by the county as a whole, and partly assumed and paid by a taxing district, including certain lands especially benefited by the construction of such road. After providing for the method of voting bonds said section provides: "And in addition may provide for the creation of a special taxing district, extending along the course of such road, or highway; such taxing or assessment district shall consist of the land and property which shall abut such highway, when it shall have been constructed, and all other lands near by, which, in the judgment of the commissioners, will be especially benefited by such highway. Such special taxing or assessment district shall be subject and liable to such proportion of the indebtedness created by such bond issue, and in such degree as the board shall designate in such resolution, and such bonds shall constitute a lien on all taxable property therein, as to such proportion so designated by the board of county commissioners. The board shall direct the road supervisor to prepare a map, to be filed with the clerk of the board, showing the tracts of land therein included, and the assessed owners thereof, and giving the definite boundaries. of such district with reference to the legal subdivisions, which. map shall be incorporated by reference into the resolution authorizing the bond issue. And such boundaries, and the land included therein, shall thereafter constitute such special taxing or assessment district."

It will be observed that this section provides for the creation of a special taxing district, and that such district shall be subject and liable to such proportion of the indebtedness created by such bond issue and in such degree as the board shall designate in such resolution; and such bonds shall constitute a lien on all taxable property therein. There is no provision, however, made in said section which requires or makes it the duty of the board of county commissioners to levy a special tax to discharge such lien. No method is provided for or designated as to the manner of levying this tax or the collection of the same, and no machinery is outlined for carrying into execution the levying or collecting of the special tax to be levied against the lands within said taxing district. It is impossible to determine how the special tax shall be levied or distributed, and how or in what manner it shall be collected or by whom, or what shall be done with the money to be thus collected. In other words, the section standing alone fails to provide any machinery for carrying into execution the provisions with reference to the special tax to be levied in the taxing district. This is the only section found in the act which deals with the subject of assessment districts or the levying of a special tax within such district. If bonds, therefore, were voted by the county, there is no method provided for paying the proportion of the indebtedness created by such bond issue, designated to be paid by the taxing district, in the order or resolution of the board authorizing a vote to be taken as to the issuance of such bonds. It requires no extended argument to prove that this section provides no means for its execution. A casual reading of such section is sufficient proof.

It was conceded upon the argument by counsel for respondent, as well as special counsel who presented a brief upon behalf of the good roads association as *amicus curiae,* that such is a fact. But it is argued by counsel for respondent and also by counsel for the "Ada County Good Roads Association" that even though sec. 21 be void, still it is the duty of the court not to declare the statute as a whole void unless the nullity and invalidity are beyond reasonable doubt. This

is now the settled law of this state.    (*Gillesby v. Board of Commrs.,* 17 Ida. 586, 107 Pac. 71.)

It is also settled in this state that if the provisions of an act are connected in subject matter, dependent on each other, and designed to operate for the same purpose, or are otherwise so dependent in meaning that it cannot be presumed that the legislature would have passed one without the other, then if one part falls the entire act must fall.    (*Ballentine v. Willey,* 3 Ida. 496, 95 Am. St. 17, 31 Pac. 994; *Knight v. Trigg,* 16 Ida. 256, 100 Pac. 1060; *Gillesby v. Board of Commrs.,* 17 Ida. 586, 107 Pac. 71.)    If, therefore, taking this statute as a whole, it clearly appears that sec. 21 was considered and recognized by the legislature as an important and integral part thereof, and so connected in subject matter with other provisions of the act, and other provisions were so dependent upon sec. 21, that it cannot be presumed that the legislature would have passed said act with such section omitted, then the entire act must fall.

Under the road law as it existed prior to the adoption of the act now under consideration, the board of county commissioners were authorized to levy a tax for road purposes of not less than ten nor exceeding sixty cents on each one hundred dollars of valuation.    Under the good roads law now under consideration, the board is authorized to levy a tax for road purposes to not exceed eighty cents on each one thousand dollars of valuation.    There must have been some reason for this decided and great reduction in the general levy the board were authorized to make, and an examination of sec. 21 clearly discloses such reason.    This section provides for the creation of special taxing districts, and authorizes the issuance of bonds upon a vote of the electors of the county for the construction of roads and bridges within such district and the levying of a special tax within said district to aid in paying such bonds.

The legislature no doubt were of the opinion that the creation of special taxing districts and the issuing of bonds as provided by this section would make it unnecessary to authorize the board of commissioners to levy so high a tax for general road purposes.    In other words, the general levy was

reduced in contemplation of the bond issue and the creation of the special taxing districts, and sec. 21 is intended to supplement sec. 20, each depending upon the other, and so connected that if sec. 21 falls the purpose of the legislature in enacting said good road law has been defeated. These two sections were clearly designed by the legislature to operate for the same purpose, that is, to provide the method of creating a fund for the construction and maintenance of the roads of the county. In our opinion, these two sections are so dependent in meaning that it clearly appears that the legislature would not have passed one without the other. If these two sections are obliterated, then the act has no force whatever, because no provision is left for raising funds for road work.

It is, however, argued by counsel for respondent that although sec. 21 is void, yet the remainder of the act should be upheld, because Rev. Codes, sec. 937, provides means by which sufficient funds can be covered into the road fund to supply the loss occasioned by reason of the defeat of the bond proposition. This section among other things provides: "Whenever it appears to the board of county commissioners that the road fund is or would be unreasonably burdened by the expense of constructing, or of maintaining and repairing, any bridge or road, . . . . the said board may, in its discretion, cause a portion of such cost or expense to be paid out of the current expense fund of the county, and may levy a special tax" to pay the same.

This, however, does not answer the contention that sec. 21 of the good roads law is an essential part thereof, and was an inducement which led the legislature to enact such law, because if that be true, then the entire act must fall and the provisions of Rev. Codes, sec. 937, cannot save the law. This section was intended as an emergency provision, and authorizes the board of county commissioners to cause a portion of the cost of constructing, maintaining and repairing any bridge or road to be paid out of the current expense fund when the road fund would be unreasonably burdened by such expense. The emergency, however, contemplated by this section was such as arises by reason of destruction or injury to roads or

bridges previously constructed. It was not intended to au-
thorize the transfer of funds from the current expense fund
to the road fund for the purpose of creating a sufficient road
fund to inaugurate a new plan or system of constructing or
building roads throughout the county. Neither was it in-
tended that the board should be authorized to make such
transfer to replace funds lost to the road fund by reason of
inoperative or void acts of the legislature. When this section
was enacted the legislature certainly did not anticipate that
the road fund of the county would be burdened on account
of the legislature passing inoperative or void acts affecting
the means and method of providing a road fund, but rather
had in mind emergencies which might arise out of the action
of the elements in destroying or injuring roads or bridges.
It was clearly within the power of the legislature to authorize
the board of commissioners to levy a higher rate of taxes for
general road purposes, and the legislature has the constitu-
tional power to determine the extent of such levy. The mere
fact that the levy provided by the legislature will not raise
a sufficient amount of money to keep the roads of the county
in that state of repair in which the board of commissioners
believe they should be kept, would not be a reason why the
board of commissioners could draw upon the current expense
fund, and was not the emergency contemplated by the pro-
visions of sec. 937, *supra*.

We have carefully examined the act involved in this case
with a view of giving it effect, as it appears to have been the
intention and desire of the legislature in enacting such statute
to provide means for better roads, but we cannot do so with-
out trespassing upon the powers of the legislature. As said
by the court in *State v. Partlow*, 91 N. C. 550, 49 Am. Rep.
652:

"A statute must be capable of construction and interpre-
tation; otherwise, it will be inoperative and void. The court
must use every authorized means to ascertain and give it an
intelligible meaning; but if, after such effort, it is found to
be impossible to solve the doubt and dispel the obscurity, if
no judicial certainty can be settled upon as to the meaning,

the court is not at liberty to supply—to make—one. The court may not allow conjectural interpretation to usurp the place of judicial exposition. There must be a competent and efficient expression of the legislative will."

And as was said by the supreme court of Montana in *Hilburn v. St. Paul, M. & M. Ry. Co.*, 23 Mont. 229, 58 Pac. 551: "So, if an act of the legislature is so vague and uncertain in its terms as to convey no meaning, or if the means for carrying out its provisions are not adequate or effective, or if it is so conflicting and inconsistent in its provisions that it cannot be executed, it is incumbent upon the courts to declare it void and inoperative." (*State v. West Side St. Ry. Co.*, 146 Mo. 155, 47 S. W. 959; 1 Lewis' Sutherland, Stat. Const., sec. 86.)

From what has been said it follows that the judgment of the district court is *reversed.* Costs awarded to *appellant.*

Sullivan, C. J., and Ailshie, J., concur.