(No. 6733. February 3, 1940.)

CALVIN E. WRIGHT, State Auditor of the State of Idaho, Respondent, v. DONALD CALLAHAN, Comptroller, Appellant.

[99 Pac. (2d) 961.]

Edwin Snow, Dean Driscoll, E. H. Anderson, Fred M. Taylor and Edwin U. Driscoll, for Appellant.

J. W. Taylor, Attorney General, and R. W. Beckwith, E. G. Elliott and Lawrence B. Quinn, Assistant Attorneys General, for Respondent.

HOLDEN, J.—The 1939 session of the legislature (Sess. Laws 1939, chap. 113, p. 191) created the office of comptroller, gave the comptroller broad powers and duties and provided for his appointment by the governor. The governor appointed appellant Callahan. Callahan thereupon entered upon the discharge of the duties and proceeded to exercise the powers conferred upon him by such statute. April 8, 1939, respondent Wright, elected state auditor at the general election of 1938, commenced this proceeding in the district court for Ada county. In his petition, respondent state auditor alleged that appellant Callahan was attempting to and would (under the comptroller statute), unless prohibited, assume, usurp and perform powers and duties vested in the State Auditor by the Constitution, that is to say:

"the power and duty to superintend the fiscal concerns of the State, to keep and state all accounts in which the State is interested, to audit all claims against the State, to examine and settle the accounts of all persons indebted to the State, to inspect the books of any person charged with the receipt, safe-keeping and disbursement of public moneys, and to require such persons to render statements of all such accounts to him at such times and in such form as he may require, to direct and superintend the collection of all moneys due to the State, to sue all persons owing money to the State, to keep a record of the expenditures of all appropriations of all departments of State, make up and submit budgets for State departments to the Legislature and report to the Governor, to supervise and control all duties being performed by the

Bureau of Public Accounts, to provide forms of vouchers for claims against the State, and certify all claims to the Board of Examiners after auditing the same.''

The petition further alleged the people of the state have a vital, legal interest in the constitutional questions involved here, and that ''they (the people) are entitled to have a speedy determination of the issues involved, your affiant and petitioner being chosen by the people to perform the duties of State Auditor it is of great public concern that the will of the people be not denied in this regard''; that ''it is a matter of great public concern that the accounts of the State of Idaho be properly and constitutionally audited,'' and that unless he (petitioner) ''can perform his constitutional duties as State Auditor without interference by the said Donald Callahan, he (State Auditor) will be subject to liability upon his official bond for the non-performance of said duties.''

April 26, 1939, appellant Callahan filed his answer to the petition of the state auditor. The answer ''denies each and every allegation in the affidavit and petition for writ of prohibition herein, excepting only as hereinafter admitted and alleged.'' It is then admitted and alleged:

''That the said Donald Callahan has, and at the time of the filing of the affidavit and petition for writ of prohibition in the above entitled proceedings was, and is now, attempting to perform the duties of Comptroller as defined, prescribed and set forth in said Senate Bill No. 67 of the Twenty-Fifth Session of the Legislature of the State of Idaho, under and by virtue of his said appointment as Comptroller, and as such Comptroller has, and is now, and at the time of the filing of the affidavit and petition for writ of prohibition in the above entitled proceedings was, attempting to perform the following duties, to-wit;''.

Then follows a statement at great length of the various and numerous duties performed and powers exercised under the Comptroller statute. It is further admitted and alleged:

''That the people of the State of Idaho generally have a vital, legal and moral interest in the Constitutional questions involved herein and are entitled to have a speedy determination of the issues involved and that it is a matter of great

public concern that the accounts of the State of Idaho be properly and constitutionally examined."

June 22, 1939, the trial court rendered and entered judgment as follows:

"Now, on this day, the court being fully advised, finds for the plaintiff, and hold that Chapter 113, Laws 1939, is unconstitutional in that its essential purpose and intent is to take from the State Auditor his constitutional duties and functions and transfer them to another officer; and, further, it appearing that without the transfer of the said constitutional duties and functions of the State Auditor, the purpose and intent of the Act fails:

"It is, therefore, hereby further adjudged that said Act is unconstitutional in its entirety; and by virtue of the premises, it is ordered that the peremptory writ of this Court issue, directed to the defendant, prohibiting him from exercising any of the duties and functions designated and prescribed for the office of Comptroller by Chapter 113, Laws 1939."

The appeal is from the judgment.

Appellant states it would seem "that the sole question involved in this appeal is whether the said Comptroller act does in fact attempt to take from the State Auditor any of his constitutional powers or duties."

■ Though not binding, it may nevertheless materially aid in the determination of that question to examine the debate in our Constitutional Convention upon the proposal to strike the word "auditor" and insert the word "controller" (sec. 1, art. 4, Const.). Idaho's constitutional convention was held in 1889. At that time the territorial officers included a "controller" with broad, numerous and well-defined powers and duties (R. S. 1887, secs. 205–222). We quote the debate upon such proposal:

"Mr. AINSLIE: . . . . A state auditor is one of the most necessary officers we can have. How are the accounts of the state to be kept unless we have an auditor, so as to have a system of checks and balances between him and the state treasurer, protective to both officers? They have found it necessary—or the Congress of the United States found it necessary, to authorize the legislatures of the territories to

create such offices, which it did in the case of those three, I believe. We have found that the office of territorial controller, or auditor, as it used to be, is one of the wisest positions established in the territorial government. . . . .

"Mr. HASBROUCK: I have an amendment.

"SECRETARY reads: To amend Section 1 by striking out in the second line the word 'auditor' and inserting in lieu thereof the word 'controller.'

"Mr. AINSLIE: I don't know that that would make any difference at all. I believe it is territorial controller now; *I know the offices are identical.*" (Italics mine.)

"The CHAIR: Is it supported? (Seconded.)

"Mr. HASBROUCK: So far as I am informed, under the present *régime* the controller of the territory does not audit any bills; if that is considered, it is a misnomer, and I presume the same line of action will be taken in the state government. For that reason I wish to change it.

"Mr. SWEET: I would like to inquire who will audit the bills of the state if the auditor does not?

"Mr. McCONNELL: I desire to ask for information of the chairman of this committee, whether it would be possible for the secretary of State to audit these accounts?

"Mr. AINSLIE: No sir, I don't think he can. . . . . You might as well say that the governor or some of the clerks could attend to the duties of the controller's office. If you want to consolidate all these offices, have nothing but a governor and have nothing but clerks—but we propose to have a state government of some dignity, not for any one man.

"THE CHAIR: The question is upon the amendment offered by the gentlemen to strike out the word 'auditor' and insert the word 'controller.' The motion is lost." (Proceedings and debates of the Idaho Constitutional Convention, vol. 1, pp. 413–415.)

It appears there was but one delegate in the convention who did not know, as pointed out by delegate Ainslie, that the offices of "auditor" and "controller" were identical. In this connection, it is very significant that while other delegates promptly, and correctly (as even a cursory examination of secs. 205–222, 1887 Rev. Stats., will disclose), challenged the assertion that "the controller of the territory does not audit

any bills," no delegate challenged the declaration that the offices were identical. So understood, it would have been a vain and useless thing to strike the word "auditor" and substitute the word "controller," and, therefore, and quite apparently for that reason alone, the amendment was lost.

An examination of the Constitutions and statutes of the different states will disclose that in 1889 many had a supervising officer of revenue whose duties were to audit all claims against the state. In Alabama, Connecticut and Texas, he was styled "Comptroller of Public Accounts"; in Arkansas, Indiana, Kansas, Minnesota and Ohio, he was called "Auditor"; in Iowa, Missouri and Rhode Island, "Auditor of the State" or "State Auditor"; in Illinois, Mississippi, Virginia and our adjoining state, Oregon, "Auditor of Public Accounts"; in California and New York, "Controller" (*State v. Doron*, 5 Nev. 399). While in one state the supervising officer was called an "Auditor," and in another, "Controller," in another "Auditor General," and in still another, "Controller-General," the powers and duties were, broadly, the same. Our Constitutional Convention chose to call its revenue supervising officer, whose duty it would be to audit all claims against the state of Idaho, a "State Auditor," as appears from the above-quoted debate and provided in section 1 of article 4 of the Constitution of the State of Idaho, reading as follows:

"The executive department shall consist of a governor, lieutenant governor, secretary of state, state auditor, state treasurer, attorney general, and superintendent of public instruction, each of whom shall hold his office for two years beginning on the first Monday in January next after his election, except as otherwise provided in this constitution. The officers of the executive department, excepting the lieutenant governor, shall, during their terms of office, reside at the seat of government, where they shall keep the public records, books and papers. They shall perform such duties as are prescribed by this constitution and as may be prescribed by law."

At the time of the adoption and ratification of our Constitution the terms "state auditor" and "controller," as evidenced by the Constitutions and statutes of that period, were generally and commonly understood to connote a super-

vising officer of revenue whose duties were to audit all claims against the state. We must presume that the framers of our Constitution so employed the term "state auditor." (*Bannock County v. Citizens Bank & Trust Co.*, 53 Ida. 159, 175, 22 Pac. (2d) 674; *Oregon Short Line R. Co. v. Pfost*, 53 Ida. 559, 572, 27 Pac. (2d) 877; *Girard v. Diefendorf*, 54 Ida. 467, 34 Pac. (2d) 48; *King v. Independent School Dist.*, 46 Ida. 800, 272 Pac. 507; vol. 1, Cooley Const. Lim., 8th ed., p. 130; vol. 1, Storey, Const., sec. 451.)

Respondent contends the Constitution, in establishing the office of state auditor, impliedly vested in that office all the powers and duties conferred upon the controller under sections 205–222 of the 1887 statutes, but appellant argues that it does not so follow, in that the term *controller* was used in the statute and that the term *state auditor*, and not *controller*, was used in the Constitution; in other words, and as stated by appellant, "the term used in the territorial statutes and that used in the Constitution were not the same," and therefore, such implication could not arise. That, in effect, is to contend the framers of the Constitution, by calling the supervisor of the state's revenue a "state auditor," instead of a controller (notwithstanding the fact that constitutions and statutes of the period used the terms interchangeably), abolished the office of "controller," and consequently, the term "state auditor" does not and could not impliedly include the powers and duties theretofore vested by the 1887 statute in the territorial controller.

In the very early case of *Gilbert v. Moody, State Auditor*, 3 Ida. 3, 7, 25 Pac. 1092, decided February 27, 1891, very shortly after the constitution was ratified, this court held:

"The office of comptroller has not been abolished by the constitution—the name only has been changed to 'auditor.'"

If the territorial office was not abolished, and further, if the only change the adoption of section 1 of article 4 worked was a change of name, then and in that case, it follows the adoption of that section did not change—add any powers and duties to, nor take any from—the office; it simply gave the office a new but synonomous name, and that having been done, lifted it out of the 1887 statute, together with its appurtenant powers and duties, and placed the whole in section 1, *supra*.

Appellant nevertheless insists the statute is not unconstitutional in that section 1, article 4, *supra*, provides:

"They (governor, lieutenant governor, secretary of state, state auditor, state treasurer, attorney general, and superintendent of public instruction) shall perform such duties as are prescribed by law", and that "the officials designated, which means all of them and not merely the auditor, are to perform duties of two entirely different types, (1) 'such duties as are prescribed by this constitution', and (2) such duties 'as may be prescribed by law'."

It will be conceded the legislature may prescribe duties in addition to those prescribed by the Constitution, provided, those prescribed by the legislature do not conflict with the duties either expressly or impliedly prescribed by the Constitution. But under our decision in *Gilbert v. Moody, supra,* we would have, by the enactment of the 1939 statute, two auditors, one a constitutional officer and the other statutory.

The supreme court of California in *Love v. Baehr,* 47 Cal. 364 (decided in 1874, some sixteen years before our Constitution was promulgated and adopted), considered and declared, with regard to what connoted constitutional powers a state officer had, otherwise than as enumerated in the Constitution, that:

" . . . . It is admitted that the Constitution contains no express limitation on the power of the Legislature in this particular. But we think a limitation is necessarily implied from the definition of the office. From the earliest period of our history as a nation, almost every State in the Union had a Secretary of State, Controller, Treasurer, and Attorney-General; and the general nature of the duties pertaining to each were perfectly well known to the framers of our Constitution. It is clear beyond controversy, that in establishing similar offices here, the framers of that instrument had reference to the same general class of duties, which it was well known pertained to such offices elsewhere."

Likewise, Wisconsin so held in 1870:

"Under our state constitution (which provides for the election of sheriffs by the electors of the county), the legislature cannot transfer to other officers, elected by the board of super-

visors, important powers and functions which from time immemorial have belonged to the office of sheriff.'' (*State ex rel. Kennedy v. Brunst*, 26 Wis. 412, 7 Am. Rep. 84.)

Also, New York first in *People v. Raymond*, (1868) 37 N. Y. 428, and again in *People ex rel. Bolton v. Albertson*, (1873) 55 N. Y. 50.

■ That rule of construction having thus been announced prior to the adoption of our Constitution, it will be presumed the framers of our Constitution, in presenting it to the people and the people in ratifying it, had such rule in mind. (*Mundell v. Swedlund*, 58 Ida. 209, 223, 71 Pac. (2d) 434, and cases therein cited.)

Since statehood this court has recognized and approved that principle. In *State v. Malcom*, 39 Ida. 185, 226 Pac. 1083, citing with approval *Love v. Baehr, supra,* and *State v. Douglass*, 33 Nev. 82, 110 Pac. 177, it is stated:

''When the constitution devolves a duty upon one officer the legislature cannot ‚substitute another.''

And in *Givens v. Carlson*, 29 Ida. 133, 157 Pac. 1120, we quoted with approval from Cooley's Constitutional Limitations, eighth edition, page 61, note 2, as follows:

''The legislature cannot take from a constitutional officer a portion of the *characteristic* duties belonging to that office, and devolve them upon an officer of its own creation.''

The same rule was quoted and approved in *Meller v. Board etc. of Logan Co.*, 4 Ida. 44, 35 Pac. 712.

Considering similar legislation, the supreme court of North Dakota declared:

'' . . . . If the legislative assembly has the power to do this, why has it not the power to provide for the appointment of a special enforcement Governor, or a special enforcement Attorney General, or a special enforcement Court? The Governor, Attorney General, and the judges are no more constitutional officers than are state's attorneys and sheriffs.'' (*Ex parte Corliss*, 16 N. D. 470, 114 N. W. 962, 965.)

See, also, *Morris v. Glover*, 121 Ga. 751, 49 S. E. 786; *People v. Howland*, 155 N. Y. 270, 49 N. E. 775, 41 L. R. A. 838.

■ The statute under consideration, in the main, clearly takes from the state auditor activities which, prior to the time of the adoption of the Constitution, were vested in the terri-

torial controller, and since the adoption of the Constitution, have been in the office of state auditor as a constitutional officer; even though some of such duties have not, by reason of intermittent enactments by the legislature, always been in the state auditor, they nevertheless belong there. (59 C. J. 116.)

Appellant further contends, however, even though the term "state auditor" impliedly includes the powers and duties theretofore vested by the 1887 statute in the territorial controller, that section 18 of article 4 deprives the state auditor of the principal functions of the former (territorial) controller, but adds that:

"We have no hesitancy in saying that if the Idaho constitution had not created the State Board of Examiners and expressly vested in it the power to audit, pass upon and determine the propriety of claims against the state, then it would be a very close question, indeed, as to whether or not the creation of an office designated as *Auditor* might not, by reasonably clear implication, have vested that official with the powers and authority now vested in Idaho in the Board of Examiners, . . . . "

Section 18, *supra,* provides:

"The governor, secretary of state and the attorney general shall . . . . also constitute a board of examiners, with power to examine all claims against the state, except salaries or compensation of officers fixed by law, and perform such other duties as may be prescribed by law. . . . . "

We held in *Bragaw v. Gooding,* 14 Ida. 288, 294, 94 Pac. 438, that:

"The constitution creates the state board of examiners as a *tribunal* (italics ours) with full power and jurisdiction to pass upon all claims against the state, except those specifically excepted by the constitution, . . . . "

To the same effect: *Pyke v. Steunenberg,* 5 Ida. 614, 51 Pac. 614; *Gem Irr. Dist. v. Gallet,* 43 Ida. 519, 253 Pac. 128; *State v. Parsons,* 57 Ida. 775, 69 Pac. (2d) 788. There is no merit in appellant's contention. That the state board of examiners is a *tribunal,* and *not a board of auditors,* cannot now be questioned, and while the board has full power as such tribunal, in the course of passing upon claims presented to it

for allowance, to correct arithmetical errors and make whatever examination may be necessary to adjust as well as determine the validity of claims, still and nevertheless, section 18, *supra,* does not confer upon that Board the powers and duties conferred upon the state auditor.

Having concluded the powers and duties conferred upon the territorial controller as an auditor and "superintendent of the fiscal concerns" and affairs of the territory were, by the adoption of section 1 of article 4, *supra,* impliedly vested in the state auditor, the legislature could not, therefore, divest him thereof by creating the office of comptroller and vesting in the comptroller the powers and duties which the Constitution already affixed to the auditor's office. (*Meller v. Board etc. of Logan Co., supra; Hampton v. Commissioners of Logan County,* 4 Ida. 646, 43 Pac. 324). Furthermore, to permit the legislature to create an office and vest in the appointee the powers and duties conferred upon a constitutional officer, would be to permit the legislature to nullify the Constitution and reduce it to a mere scrap of paper.

The question then arises as to whether the legislature, notwithstanding, would have created the office of comptroller, provided a salary of $4,000 annually therefor, and in addition to that, authorize him "to appoint, fix the compensation, and prescribe the duties and powers of such officers, deputies, assistants, accountants, lawyers, experts, and other persons as may be necessary for the performance of the duties of the comptroller," (Sess. Laws 1939, sec. 3, p. 191).

In answering that question it must be kept in mind that the legislature had created the office of comptroller and consolidated therein the Bureau of Public Accounts, the Bureau of Budget, as well as the office of state auditor (except as to the duties conferred upon him as a member of the State Board of Equalization by sec. 12 of art. 7), the object of the legislature being to combine those units of the state government into a single, harmonious, efficient whole. To accomplish that object, the comptroller is authorized to employ numerous experts—and in doing so he is not limited either as to the number to be employed or the compensation to be paid. It is common knowledge that experts demand

and receive high salaries. Hence, to staff the comptroller's office with experts on the scale authorized by the legislature would necessarily require the expenditure of large sums of money. The object the legislature had in mind—the centralization of the powers and duties of the auditor's office and the above mentioned bureaus in the comptroller's office—cannot be accomplished in that such object, insofar as the transfer of the powers and duties of the state auditor is concerned, is in conflict with section 1 of article 4 of the Constitution. With the auditor's office eliminated, surely it cannot be reasonably contended the legislature would have authorized the employment of an expensive staff of experts for service in bureaus which had operated for many years without a corps of experts. We refuse to attribute to the legislature an intent to so waste the taxpayers' money. In these circumstances, it cannot be presumed the legislature would have passed those provisions of the comptroller's statute, creating the office of comptroller, without also enacting the other provisions of the statute transferring the powers and duties of the state auditor to the office of the comptroller. It is well settled in this state that:

"When an act having but one object is in part valid and in part invalid, and the parts are so mutually connected with and dependent upon each other as to conditions, considerations, or compensations for each other as to warrant the belief that the legislature intended them as a whole and, if all could not be carried into effect, the legislature would not have passed the residue independently, the act must be held void." (*Ballentine v. Willey*, 3 Ida. 496, 31 Pac. 994, 95 Am. St. 17; *In re Gale*, 14 Ida. 761, 95 Pac. 679; *Knight v. Trigg*, 16 Ida. 256, 100 Pac. 1060; *Gillesby v. Board of County Commissioners*, 17 Ida. 586, 107 Pac. 71; *Cunningham v. Thompson*, 18 Ida. 149, 108 Pac. 898; *Ferbrache v. Drainage District*, 23 Ida. 85, 128 Pac. 553, Ann. Cas. 1915C, 43, 44 L. R. A., N. S., 538; *Epperson v. Howell*, 28 Ida. 338, 154 Pac. 621; *Dumas v. Bryan*, 35 Ida. 557, 207 Pac. 720; *Johnson v. Diefendorf*, 56 Ida. 620, 57 Pac. (2d) 1068; *State Water Conservation Board v. Enking*, 56 Ida. 722, 723, 58 Pac. (2d) 779.)

Moreover, if the legislature itself had believed its object could be accomplished without including the provisions of the

statute relating to the transfer of the duties and powers of the state auditor, it is needless to say it would not have included them.

It follows from what has been said the judgment of the trial court must be affirmed, and it is so ordered.

Ailshie, C. J., and Budge, Givens, and Morgan, JJ., concur.

Petition for rehearing denied.