722 P.2d 465

Joe R. WILLIAMS, State Auditor of the State of Idaho, in his official capacity, Plaintiff-Respondent,

v.

STATE LEGISLATURE OF the STATE OF IDAHO; and James R. Risch, President Pro Tempore of the Senate; Thomas W. Stivers, Speaker of the House of Representatives; and Bruce J. Balderston, Legislative Auditor; in their official capacity and not as individuals, Defendants-Appellants,

and

John V. Evans, Governor; in his official capacity and not as an individual, Defendant.

No. 15483.

Supreme Court of Idaho.

June 24, 1986.

Howard I. Manweiler and Mark H. Manweiler, Boise, for defendants-appellants.

John E. Sutton, Boise, for plaintiff-respondent.

HUNTLEY, Justice.

The Idaho State Legislature, et al. (Legislature) appeals from a declaratory judgment by the district court holding that the state constitution empowers the State Auditor to conduct "post-audits," that the Legislature cannot divest the State Auditor of such authority through the appropriation process, and that the Legislature's failure to provide funding to the State Auditor for post-audits deprives the State Auditor of his constitutional authority. The district court issued an injunction requiring the Legislative Auditor to perform any post-au-

dits which the State Auditor requests and requiring the Legislature to appropriate funds to the State Auditor for the post-audit function. We affirm in part, reverse in part and remand.

Since at least 1935, the Legislature has authorized post-audits of the funds expended by the State of Idaho, and has created certain state agencies to perform such post-audits. In 1935, the legislature created the Bureau of Public Accounts to perform the post-audit function. *See Smylie v. Williams*, 81 Idaho 335, 343, 341 P.2d 451, 455–56 (1959) (upholding the legislative creation of the Bureau of Public Accounts and its post-audit authority). In 1970, the Idaho Legislature created the office of Legislative Auditor, and granted it the authority to conduct post-audits. I.C. §§ 67–441, 67–445, 67–447–48. From 1935 to the present, the Bureau of Public Accounts, and later the Legislative Auditor, have performed post-audit functions for the Legislature. We find no evidence in the record to indicate that the State Auditor duplicated any of the post-audit functions performed by the Bureau of Public Accounts or the Legislative Auditor.

In January 1983, Williams submitted a budget request to the Legislature requesting funding for the conduct of post-audit functions by his office. The Legislature appropriated $3,831,000 to the office of State Auditor. By line-item appropriation, the Legislature appropriated funds to the auditor for (1) the pre-audit function, and (2) for the State Computer Center, but appropriated *no* money for any post-audit functions. The Legislature appropriated $877,800 to the office of Legislative Auditor to carry out its post-audit program.

In October 1983, the State Auditor filed this action alleging that the Legislature's failure to appropriate funds to the office of State Auditor for the post-audit function deprived the office of State Auditor of a constitutional power and duty. The district court ruled in favor of the State Auditor and issued a permanent injunction which, in effect, placed the authority for performing the post-audit function in the office of State Auditor. On appeal to this Court, the permanent injunction and the declaratory judgment were stayed during the pendency of this appeal.

I.

■ The Legislature may not prevent a constitutional officer from performing his constitutional duties. *Wright v. Callahan*, 61 Idaho 167, 178, 99 P.2d 961, 965 (1940). The main issue before this Court is whether performing the post-audit function is a constitutional duty of the State Auditor.

The Idaho Constitution, art. 4, § 1, creates the elected position of State Auditor in the executive department of state government. The constitution states that the auditor shall "perform such duties as are prescribed by this Constitution and as may be prescribed by law." Idaho Const. art. 4, § 1. The constitution does not set forth any express powers for the State Auditor. We note that the constitution does not distinguish between the pre-audit and post-audit functions to be performed by the auditor.

*Wright v. Callahan* held that the State Auditor has implied constitutional powers and duties equivalent to those of the Territorial Controller pursuant to title I, ch. VII, § 205 of the Revised Statutes of Idaho Territory of 1887. 61 Idaho at 177, 179–180, 99 P.2d at 964–66. The question before us then becomes whether the post-audit function was included in the statutory duties of the Territorial Controller.

At this point, we must define the term "post-audit." In the context of state government, a post-audit is, in its most general terms, any examination of the books, reports, records, etc. of a state agency concerning financial transactions for which the State Treasurer has already paid. Neither side disputes that the State Auditor has some post-audit powers under this definition. *See, e.g.,* I.C. § 67–1030 (granting the State Auditor power to examine any of the books, papers, accounts, bills, vouchers or other documents of property of any or all of the state officers and the custodians of state funds). However,

the term post-audit may be defined more precisely. Counsel for the Legislature defined post-audit as an examination of presently existing books and records which reflect past and completed financial transactions, the rendition of a professional accounting opinion as to whether such past transactions were correct in amount and in conformance with lawful authority, and whether the books and records were kept in accordance with generally accepted accounting principles. This latter type of post-audit, as presently conducted by the Legislative Auditor, may concern the "management, efficiency, economy and effectiveness" of a governmental agency. I.C. § 67–445. (The latter type of audit is herein referred to as a "modern post-audit.")[1] Although counsel for the Legislature admits that the Territorial Statutes contain some functions which are post-audit in nature, he argues that the Statutes do not evidence a power in the State Auditor to conduct the full range of modern post-audit functions. We disagree.

Without doubt, the Territorial Statutes authorized the Territorial Controller to perform some post-audit functions. The following powers of the Territorial Controller all implicate post-audit functions:

1. To Superintend the fiscal concerns of the Territory.

. . . .

3. To accompany his bi-ennial report with tabular statements, showing:

1. The amount of each appropriation for the two preceding fiscal years, the amounts expended, and the balance, if any.

2. The amount of revenue chargeable to each county for such years, the amount paid, and the amount unpaid; or due therefrom.

. . . .

5. To suggest plans for the improvement and management of the public revenues.

. . . .

9. To keep a register of warrants, showing the Fund upon which they are drawn, the number, in whose favor, for what service, the appropriation applicable to the payment thereof, when the liability accrued, and a receipt from the person to whom the warrant is delivered.

. . . .

14. In his discretion to inspect the books of any person charged with the receipt, safe keeping, or disbursement of public moneys.

The Revised Statutes of Idaho Territory, tit. I, ch. VII, § 205 (1887) (hereinafter Territorial Statutes). The Legislature does not seriously contend that these sections do not implicate post-audit powers or that the State Auditor is not empowered to perform these functions. In fact, the Legislature has specifically empowered the State Auditor to perform these functions in the enumerated powers of the State Auditor set out in the Idaho Code. *See* I.C. §§ 67–1001, 67–1030. The Legislature contends, however, that the Territorial Statutes nowhere authorize the State Auditor to perform the modern post-audit function.

We find the Legislature's contention to be unfounded. The record reveals no evidence that modern post-audit functions were performed *at all* at the time the 1887 Territorial Statutes were in effect. Of course, the constitution would not be expected to enumerate a power for the State Auditor concerning a form of audit which was not in use at the time the constitution was ratified. Therefore, the constitution does not directly speak to the issue of whether the State Auditor may perform modern post-audits.

In construing the constitution, the primary object is to determine the intent of

---

**1.** Although the issue is not directly raised by this appeal, we observe that the "modern post-audit," to the extent which one branch of government may use such an audit to evaluate the performance of another branch, may implicate the separation of powers provision of the Idaho Constitution. Idaho Const. art. 2, § 1. We distinguish such a "performance audit" from an audit consisting of an examination of the books and financial records of a state agency and the rendition of a professional accounting opinion concerning those books and records.

the framers. *Engelking v. Investment Board of the State of Idaho,* 93 Idaho 217, 221, 458 P.2d 213, 217 (1969). The situation at bar, where the increased sophistication of state government has required the advent of more thorough accounting techniques, is analogous to the development of fourth amendment law in the area of wire taps and electronic bugging devices. The fourth amendment of the United States Constitution states only that the people have a right "to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures...." U.S. Const. amend. IV. Of course, the framers of the United States Constitution could not have anticipated that sophisticated electronic devices would also threaten the security of people in this country. Notwithstanding the fact that the fourth amendment does not mention any sort of electronic surveillance, the United States Supreme Court has interpreted the fourth amendment to protect against unreasonable invasions of privacy through the use of electronic surveillance devices. *See Berger v. New York,* 388 U.S. 41, 51, 87 S.Ct. 1873, 1879, 18 L.Ed.2d 1040 (1967). The Court has interpreted the intent of the framers of the U.S. Constitution to prohibit all unreasonable searches and seizures, despite the anachronistic language in the fourth amendment which might prohibit the court from restricting searches by electronic devices. This Court should similarly seek to discover the intent of the framers of the Idaho Constitution in determining the extent of the State Auditor's powers.

The Legislature claims that the Territorial Legislature performed all the activities analogous to the modern post-audit which occurred in Idaho prior to adoption of the state constitution. We take judicial notice of the Territorial Legislature's reports cited by the Legislature and find that the Territorial Legislature did not perform any post-audit activities which the Territorial Controller was not also authorized to perform.[2] All of the auditing which was performed by the Legislature could have been performed by the State Auditor under the Auditor's power "in his discretion to inspect the books of any person charged with the receipt, safekeeping, or disbursement

2. *See, e.g., Report of the Joint Committee on Examination of the Territorial Treasurer and Auditor's accounts,* Journal of the 2nd Session of the Council of Idaho Territory, 1864, 162–163 (reporting examination of the accounts of the Territorial Controller and listing warrants paid to state officers; committee disapproves of warrants paid to Federal officers); *Joint Committee Report on Investigation of Books of Territorial Treasurer and Controller,* Journal of the Fourth Session of the Council of Idaho Territory, 1867, 197, 411 (finding the Controller's and Treasurer's books in order); Laws, Memorials and Resolutions passed by the Fourth Legislative Assembly of the Territory of Idaho, and Concurrent Resolution No. 8, 212 (authorizing investigation of the affairs in the offices of the Territorial Controller and the Territorial Treasurer); 1866 Territorial Session Laws, Concurrent Resolution No. 18, 214 (authorizing investigation of office of Secretary of the Territory) (1867); *Report of the Joint Committee on Examination of the Territorial Officer's books,* Journal of the Sixth Session of the Legislative Assembly of the Territory of Idaho, 1871, 149–155 (examining the books of the Territorial Controller and the Territorial Treasurer and finding the books in order, but suggesting changes in the performance of the county auditors, changes in property tax valuation and making the auditor and trea-

surer of each county a salaried officer); *Report of Joint Committee of Finance and Ways and Means,* Council Journal of the Ninth Session of the Legislative Assembly of the Territory of Idaho, 1877, 135–137 (finding the books of the Territorial Treasurer and Controller to be correct but criticizing the accounting techniques used by the former Controller); *Report of Finance Committee on Examination of Controller and Treasurer,* Journal of the Council of the 12th Legislative Assembly of the Territory of Idaho, 1883, 160–161 (finding Controllers and Treasurers books to be in order and reporting that money will be disbursed and reported to Controller); Joint Resolution No. 8, 175–176, (authorizing Finance and Ways and Means Committee to Examine the Controllers' and Treasurers' books); *Report of Subcommittee on Examination of Controller and Treasurer,* Journal of the Council of the Thirteenth Legislative Assembly of the Territory of Idaho, 1885, 269–270 (finding Controller and Treasurers' books to be properly kept); *Report of Committee on Territorial Affairs,* Journal of the Council of the Fourteenth Legislative Assembly of the Territory of Idaho, 1887, 105 (finding state vouchers correct and in proper order); *Report of Subcommittee on Financial condition of the territory,* Id. at 204–205 (presenting report on financial condition of the territory).

of public monies." Territorial Statutes, § 205 (1887).[3]

We conclude that the Territorial Controller was authorized to perform all the types of audits which were performed in the territory prior to statehood. Further, the Controller was charged with superintending the fiscal concerns of the territory. Territorial Statutes, § 205. Moreover, the Controller was expressly directed to perform certain post-audit functions. Given these facts, counterbalanced only by the fact that the state constitution does not mention the term post-audit, we conclude that the Territorial Controller would have been authorized to perform a modern post-audit function should that function have been in use at the time. The above considerations lead us to conclude that the constitution authorizes the State Auditor to have those comprehensive auditing powers.

## II.

The Legislature argues that the long history of legislative control of post-audit functions prevents the State Auditor from exercising that power. This point is incorrect as a matter of law. The Legislature may not usurp the power of a constitutionally created executive agency, whether or not the power has been exercised. *Wright*, 61 Idaho at 179–80, 99 P.2d at 966. The Maryland Court of Appeals has stated:

> The rule which can be distilled from the cases is essentially this. If an office is created by the Constitution, and specific powers are granted or duties imposed by the Constitution, although additional powers may be granted by statute, the position can neither be abolished by statute nor reduced in impotence by the transfer of duties characteristic of the office to another office created by the legislature....

*Murphy v. Yates*, 276 Md. 475, 348 A.2d 837, 846, (1975) (citations omitted).

As shown in the previous section, the post-audit function is a characteristic power of the State Auditor. Therefore, the Legislature may not prohibit the auditor from exercising that power, even though the Legislature has traditionally performed the function.

We do not hold that the Legislature may not duplicate audits performed by the State Auditor's office. In fact, this Court held in *Smylie v. Williams*, 81 Idaho 335, 341 P.2d 451 (1959) that the Legislature has the power to perform its own audits. *Id.* at 342, 341 P.2d at 455. However, *Smylie* did not hold that the Legislature may usurp the post-audit powers of the State Auditor. As this court stated in that case:

> We do not herein consider or decide what all the powers and duties are which pertain to said Bureau [of Public Accounts] or to the office of the State Auditor. Suffice to say that *if* there exists among the powers and duties of the office of State Auditor a duty and authority to perform an audit of the funds in the state treasury it would not necessarily follow that the duty and power as provided in said § 67–2703, I.C., is repugnant to or in conflict with such power and duty of the State Auditor.

Id. at 342, 341 P.2d at 455 (emphasis added).

Further, it does not dispose of the present controversy to state that the framers of the constitution could not have intended that the State Auditor be allowed to examine his own books. While it should be noted that the present Legislative Auditor,

---

**3.** The Controller could both "suggest plans for the improvement and management of the public revenues" and "[i]n his discretion ... inspect the books of any person charged with the receipt, safe keeping or disbursement of public moneys." Territorial Statutes, § 205 (1887). Our review of the Territorial Legislature's Journals reveals that that body performed no auditing functions beyond those listed above for which the auditor has power. We find no indication that the Legislature authorized any modern post-audit activities such as requiring an opinion by a certified public accountant that the books of state agencies were kept in accordance with generally accepted accounting principles. In fact, we find no evidence in the record that the terms "certified public accountant" and "generally accepted accounting principles" were in use at the time the Idaho Constitution was ratified.

the only one presently funded to perform post-audits, has the same problem with regard to performing the post-audit on his own records, a post-audit of the auditor's office itself is a very small part of the auditor's duties. The auditor's office is only one of many state offices which must be audited. Second, we do not dispute that it may be preferable to have an independent auditor come in to examine the auditor's own books. However, we find nothing in the language or history of the constitution which *requires* an independent auditor be used.

## III.

■ Finally, we note that the Legislature did not directly prohibit the State Auditor from performing the post-audit function. Rather, the Legislature simply did not allocate any funds to the auditor's office for the post-audit function, while specifically delineating that the auditor's funds would be used either for pre-audit activities or to fund the state's computer center. We hold that the Legislature's actions were impermissible. "[T]he legislature cannot do indirectly through the means of line item appropriations ... what is impermissible for it to do directly." *Board of Regents of Higher Education v. Judge,* 168 Mont. 433, 543 P.2d 1323, 1333 (1975). Therefore, the Legislature may not prohibit the State Auditor from performing

his constitutional duties through use of a line-item appropriation.[4]

We note the dissent authored by Justice Shepard and respectfully disagree. The dissent interprets the crucial precedent of *Wright v. Callahan* too narrowly.[5] *Wright* stands for more than that the Legislature may not abolish a constitutionally-created office; *Wright* further stands for the proposition that the State Auditor impliedly has the powers granted the Territorial Controller prior to statehood. The dissent concludes that, since the State Auditor has never performed the post-audit function, he must not be *authorized* to perform that function. However, as discussed, *supra,* a constitutional official need not exercise a function to be authorized to perform it. As we found no evidence that the framers of the Idaho Constitution intended any limitation on the State Auditor's power to audit, we have held that the Legislature cannot prohibit the State Auditor from performing post-audits or any other function of that constitutional office.

We recognize that when this opinion issues the Legislature will have completed its 1986 session and will have set agency budgets for fiscal year 1987. Therefore, this opinion shall not take effect until July 1, 1987. The injunction of the district court is dissolved.

---

**4.** By virtue of the grant of authority in the constitution, Idaho Const. art. 4, § 1, a constitutional officer may carry out such duties as are specified in the constitution and which are inherent in the nature of the office. Other courts have held a constitutional officer may treat appropriated monies as a lump sum to be expended in the discretion of the officer, so as to carry out the duties of the office. *Anderson v. Lamm,* 195 Colo. 437, 579 P.2d 620, 623–624 (1978). Further, other courts have held the Legislature cannot reduce the level of appropriations to a constitutional officer below the level necessary to carry out the constitutional duties of the office. *See Board of Elementary and Secondary Education v. Nix,* 347 So.2d 147, 155 (La.1977) (holding that legislative reduction of Board's staff to eight violated the separation of power doctrine); *see also Thompson v. Legislative Audit Commission,* 79 N.M. 693, 448 P.2d 799, 801 (1968) (holding that legislature's reduction of state auditor's annual salary from $7,200 to

$5,200 to $1.00 over three years violated the separation of powers doctrine).

**5.** The dissent also misinterprets the majority opinion. Our opinion does not hold that the Legislative Auditor shall become an employee of the State Auditor—only that the Legislature may not prohibit the State Auditor from performing post-audit functions. As mentioned, *supra,* the Legislative Auditor may perform any audits authorized by the Legislature. Further, this opinion does not hold that this court may dictate what expenditures the Legislature must make. It holds only that the Legislature may not, through means of a line-item appropriation, prohibit a state officer from performing his constitutional duties. This appeal did not raise the issue of whether the total funds appropriated to the State Auditor's office were adequate to perform the post-audit function as well as the other duties of the State Auditor.

Affirmed in part, reversed in part, and remanded.

Costs to respondent. No attorney fees awarded.

BAKES and BISTLINE, JJ., concur.

SHEPARD, Justice, dissenting.

The defects of the majority opinion are many. It consigns to oblivion more than 100 years of state and territorial history. It overturns more than 50 years of legislative fiscal responsibility. In my view it is an unconstitutional invasion by the judiciary of the most fundamental legislative process, the power to allocate and appropriate money.

At issue here is a function which has come to be known as "post-audit." Paraphrasing the language of the New Mexico court in a somewhat analogous case: "Post-audit" is a desirable modern approach by which the legislature designates its own officer to perform a legislative function, *i.e.*, the legislature having appropriated the funds, should have its own official report to it with respect to how the funds are expended. *Thompson v. Legislative Audit Commission*, 79 N.M. 693, 448 P.2d 799 (1968). I would take judicial notice that the practice is likewise widespread in the private business sector. Corporate stockholders, potential bond purchasers, financial institutions and creditors are not content to rely upon the representations of those who receive and disburse funds and keep books of account, but rather they require experts (usually certified public accountants) to scrutinize and examine the books of account to determine if the financial status is correctly stated, if they correctly reflect the financial transactions, and if the records are kept and maintained according to generally accepted accounting principles.

Such a "post-audit" process is a relatively recent development both in the governmental and the private sector. In the context of Idaho's history, and this case, the term "post-appropriation examination," or any of a number of other terms, could have as well been used. Our history demonstrates clearly to me, at least, that during Territorial times, at the time of the adoption of our Constitution, and until the present time, the term "audit" has meant that the State Auditor, upon being presented money claims against the state, ascertained that the claim was valid, was supported by such documentation as he might feel necessary, and that there existed in a designated appropriated fund sufficient monies to pay the claim. Thereafter the State Auditor issued a warrant drawn upon the State Treasurer and the treasury of the State of Idaho, directing that the claim be paid. While agencies and departments of our state government are appropriated funds by the legislature and maintain books of account, they in actuality disburse no funds. The disbursement of funds is only accomplished through the mandated authority and duties of the State Auditor and the State Treasurer. I.C. §§ 67-1011, 67-1201(4). The books of account of any agency or department are maintained in accordance with the requirements specified by the State Auditor, and claims for payment of monies are submitted only on forms prescribed by the State Auditor, together with documentation required by him. I.C. §§ 67-2005, -2010, -2011, -2012.

There is no showing in this record, the State Auditor does not assert and the majority opinion concedes, that the Office of the State Auditor for the entire existence of the Territory and State of Idaho, has never performed or attempted to perform the function at issue here. The legislature has specifically defined the qualifications necessary to perform the so-called "post-audit" function. I.C. § 67-443. The record before this Court is totally devoid of any showing that the plaintiff herein possesses any of the necessary qualifications to perform the duties at issue here. Indeed, the lower court and the majority here implicitly recognize this by requiring that the legislature designee who possesses the requisite qualifications, shall now become an employee of the plaintiff State Auditor. Such a result can be termed as nothing but incongruous.

More than 50 years ago the Idaho Legislature recognized a need for post-appropriation information. Undoubtedly it was felt that the legislature needed to review, at each legislative session, the efficacy of the previous session's appropriations. To that end it created the Bureau of Public Accounts, and in *Smylie v. Williams*, 81 Idaho 335, 341 P.2d 451 (1959), this Court held that the legislative creation of that bureau and its post-audit authority was constitutional. In 1970 the legislature created the Office of Legislative Auditor, defined its duties and authority, and legislatively determined the qualifications which must exist in the person holding that office. Since 1935 the function of post-auditing of the public funds of the State of Idaho has been performed only by the Bureau of Public Accounts or the Office of the Legislative Auditor.

The majority opinion hangs solely on an illogical and faulty premise, *i.e.*, while no such function as "post-audit" existed in Territorial days or at the time of the adoption of our Constitution, and while it is a process of relatively recent vintage, we, in our omniscience, have determined that *if* it had existed, and *if* the framers of our Constitution had thought about it, they would have included such function in the Office of State Auditor. Albeit the function and the office were legislatively rather than constitutionally created, the majority holds that the function belongs constitutionally in the Office of State Auditor. Holmes is reputed to have said that experience rather than logic has been the life of the law. The majority here, in its desire to obtain the result, has consigned both logic and experience to oblivion.

It is to be noted that the majority opinion cites little authority for its broad and sweeping invasion of the legislative process. *Wright v. Callahan*, 61 Idaho 167, 99 P.2d 961 (1940), was a relatively simple and straightforward case. There the legislature, for whatever reason, decided to abolish the Office of the State Auditor by transferring all of its duties and responsibilities to the legislatively created office of State Comptroller. The Court there prop-erly held that the legislature could not abolish a constitutionally created office. That, and no more, was the Court's holding.

In *Smylie v. Williams*, 81 Idaho 335, 341 P.2d 451 (1959), the Court held that the legislature, indeed, could constitutionally create the Office of the Bureau of Public Accounts and place in such office the duties and responsibilities for conducting the "post-audit function." The Court held only that, and no more. Although the parties there were essentially identical to those in the instant case, and the issue was precisely the same, the Court did not find it necessary to hold that compliance with the Constitution requires two offices to duplicate and perform exactly the same function with a corollary duplicative waste of public money.

Admittedly there is sparse authority from other jurisdictions on the precise issue presented here. Such a paucity of precedent only indicates to me that no other court, however aggressive or activist, has found it desirable to so invade the legislative process. However, I point out that the New Mexico Supreme Court placed its stamp of constitutional approval on legislation designed to accomplish the same purpose. It was only when the New Mexico Legislature attempted to entirely dismantle that state's office of State Auditor, remove all of its duties, authority and responsibility, and reduce its salary to five dollars a year, did the New Mexico court, just as did this Court in *Wright v. Callahan, supra*, hold that the legislature had no power to totally abolish the Office of State Auditor. *Thompson v. Legislative Audit Commission*, 79 N.M. 693, 448 P.2d 799 (1968).

Most disturbing in the holding of the majority is its implicit conclusion that this Court can and will dictate to the legislature what appropriation of money will be made. From the infancy of this state the appropriation process has been considered peculiarly and particularly the realm of the legislature, and there has been an absolute prohi-

bition against the expenditure of monies unless and until the legislature has appropriated monies therefore. ID. CONST. art. 7, § 13; *State v. Musgrave*, 84 Idaho 77, 370 P.2d 778 (1962); *Epperson v. Howell*, 28 Idaho 338, 154 P. 621 (1916). This Court now directs the expenditure of monies in the absence of any legislative appropriation.

The action of the majority today is an unnecessary step in the wrong direction in the context of interdepartmental relations of state government. Admittedly, a few jurisdictions have held that courts may mandate the expenditure of monies which the legislature has failed to appropriate. *Noble County Council v. State*, 234 Ind. 172, 125 N.E.2d 709 (1955); *Judges For Third Judicial Cir. v. County of Wayne*, 386 Mich. 1, 190 N.W.2d 228 (1971); *State ex rel. Weinstein v. St. Louis County*, 451 S.W.2d 99 (Mo.1970); *Commonwealth ex rel. Carroll v. Tate*, 442 Pa. 45, 274 A.2d 193 (1971). Such cases usually result from a confrontation between the judicial and legislative branches of government resulting from the asserted inability of courts to carry out their mandated constitutional duties. The instant case, in my opinion, presents no such gut-wrenching decision of monumental governmental policy. Rather, the legislature 50 years past created an office and assigned duties to it which had never been performed by any other office in the previous 100 years. The Court today, under the aegis of constitutional law, holds that such legislative policy judgment was, and is, prohibited.

I fear that the majority of the Court has failed to adequately consider the road down which it will travel in the future, and the obstacles it will confront as a result of today's decision. As indicated in the majority opinion, the legislature did not appropriate money to the Office of State Auditor for the function at issue here. If the 1987 session of the Idaho Legislature again refuses to appropriate such funds to the State Auditor, how will this Court act? Will it abandon its intrusion upon the legislative process and merely hold that since the State Auditor cannot perform the func-

tion, no one else may, and thus prohibit what is an admittedly desirable and necessary function. Or will it, under some assumed power, mandate the members of the legislature to vote for and pass, and the governor approve, an appropriation to the State Auditor. If the legislature and/or governor refuse, what action will this Court then take. Assuming that the sum of $50,000.00 is an inadequate amount to perform the function, what if the legislature appropriates that sum to the Office of State Auditor to perform the "post-audit" function. Will this Court then determine what is an adequate sum and mandate the legislature to vote for and pass, and the governor approve, an appropriation measure for a specific sum adequate to perform the post-audit function. I suggest that there are a host of possible legislative reactions to this Court's opinion, any number of which may place this Court in stormy and unchartered waters.

Finally, and ironically, I must express my approval of what I view as implicit in footnote one of the majority opinion. The majority warns against the existing legislative language authorizing an audit "to evaluate the performance of another branch" of government and the implication of the separation of powers provision of the Idaho Constitution. ID. CONST. art. 2, § 1. In my view a *fiscal* examination to determine the validity of the financial books and records, and the legality of the expenditures reflected therein, is desirable. But also in my view, the use of public funds by one branch of government to critique the performance of another department or branch of government is beyond the ambit of legislative authority and to be condemned as intrusive and violative of the separation of powers provision of our Constitution.

DONALDSON, C.J., concurs.